[Civ. No. 49315. Second Dist., Div. Five. Apr. 26, 1978.]

In re the Marriage of MARIA BELKOT and PERRY TUDOR CLARK.
MARIA BELKOT CLARK, Appellant, v.
PERRY TUDOR CLARK, Respondent.

418

## Counsel

Victor S. Amstadter for Appellant.

Trope & Trope, Sorrell Trope and Timothy S. Harris for Respondent.

## Opinion

**HASTINGS, J.**—Maria Belkot Clark (Maria) and Perry Tudor Clark (Perry) were married for 16 years and 2 months and had 1 child, Christopher Belkot Clark born May 23, 1960. The parties separated on December 5, 1974, and Maria filed an action to dissolve the marriage. The trial was in July of 1975. The parties stipulated as to the value of each of the items of community property, and that custody of Christopher should be awarded to Maria with reasonable visitation rights to Perry. At the time of trial, Maria was 50 years of age and had a muscular disability for which she had been under physical therapy treatments for 3 or 4 years. There was also testimony that she had heart problems. According

to her financial declaration and testimony, she required $1,910 per month after taxes for her and Christopher's support. Maria had been raised in Germany and had had no particular job training. While living in Germany, she worked as a telephone operator and in the electronics field. Prior to her marriage she worked in the United States as a domestic.

Maria is challenging the court's order in several respects which we state and discuss as follows:

## DIVISION OF STOCK IN A CLOSELY HELD CORPORATION

The court awarded all of the shares (5,250) of capital stock owned by the parties in Precision Forge Company (Precision) (value $400,000) to Perry. Maria claims this was error because she specifically wanted her community share of the stock distributed to her. Precision is a closely held corporation with Perry holding 50 percent of the outstanding shares and a person by the name of Mark Perry (Mark) owning the other 50 percent. Perry is a certified public accountant and does the bookkeeping and a portion of the accounting for Precision. He described his position as "the accountant and a glorified executive secretary to Mark . . ." Perry's salary, as an employee, is $5,000 per month ($60,000 per year). In the year preceding the dissolution hearing, he received from corporate earnings an additional $75,000. He testified that it would be disastrous to allow Maria to own any shares in Precision Forge Company because approximately 60-70 percent of the company's work is performed for a government agency that is "very conscious of everybody in the organization." Mark testified that he objected to any nonparticipating minority shareholders, and corroborated Perry's testimony that the customers of the business were very sensitive to any internal conflict in the business. He further stated that he would probably abandon the company if the court awarded Maria one-half of the community property stock.

Maria testified that it was her desire to retain her one-half community interest in the company, even though she realized that there was a possibility that all of the money made by the company might be paid out in salaries and that there would be no dividends. This was a chance she was willing to take. She also agreed to waive spousal support if she were awarded her share of the stock. Maria further agreed to give Perry a proxy to vote her shares.

In connection with this issue, the court made the following finding: "The court finds that respondent [Perry] has had, and should in the future have the sole responsibility, with his business associate, for the operation of Precision Forge Co. in order to maintain same as a going business and as a source of support for the parties and the minor child."

█ Civil Code section 4800, subdivision (b)(1), states: "Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property." Volume 4 of the Assembly Journal for the 1969 Regular Session, commenting upon section 4800, subdivision (b)(1) of the Civil Code, states at pages 8061-8062: "The new act requires an equal division in all but two specific instances. . . . The first exception is that if the nature of the property is such that an equal division *is not possible without impairment of a principal asset,* then the court shall have discretion to establish conditions which will result in a substantially equal division. For example, if one major asset is a going business, it could well be destructive to award each spouse a half interest therein. Under the 'substantially equal' requirement, however, the court could award the entire business to the husband and grant the wife her one-half interest in cash or give her a greater share of other property or a greater support allowance. . . ." (Italics added.)[1]

The above comment confirms that the court has the discretion to award corporate stock in a closely held company where justified by economic circumstances. We are required to support a finding of the trial court if there is sufficient evidence to support it. Here, the court was apparently impressed with the testimony of Perry and Mark that the principal clients of the business might dislike a change in the stock ownership, and possibly transfer their business elsewhere, and that Mark was sincere in his statement that he would close the business if Maria was a minority stockholder. Threat or not, Mark, as a 50 percent stockholder, could legally dissolve Precision, and the trial judge obviously did not want to take a chance that this valuable asset might be dissipated. This concern was clearly reflected in the court's finding (*ante*), and we cannot say that it abused its discretion in this regard as a matter of law.

---

[1]Maria cited this comment in aid of her argument. She contends equal division of the stock *is* possible without impairment of the asset because she was willing to relinquish any control she might have in its management. She claimed Mark's testimony that he might abandon the business was a threat to intimidate the court and must be rejected.

## CONSIDERATION OF CAPITAL GAIN TAX
## IN DIVISION OF COMMUNITY PROPERTY

■■ Maria next argues that, if it was proper for the court to award all of the stock to Perry, it erred because a capital gain tax on the transaction chargeable to her reduced her share of the community assets. This argument is meritorious. To offset the award to Perry of all the stock, and to divide the community property equally, the court ordered him to issue to Maria his secured promissory note for $114,798.[2] A witness for Maria, who was an attorney and CPA, testified that if the stock was divided equally, there would be no tax. On the other hand, if Perry was awarded all of the stock and Maria received a promissory note from Perry for the value of her shares that would be paid for from his separate assets, there would be a taxable event costing Maria approximately $33,565 in capital gain tax. (*Carrieres* v. *C. I. R.,* 552 F.2d 1350, 1351, affg. 64 T.C. 959.) The court, as noted above, adopted the latter approach but did not take into consideration the capital gain tax to Maria that would substantially reduce her portion of the community property. Maria claims that to fully compensate her she should have received a promissory note for $114,798 plus one-half of the capital gain tax and one-half of the additional tax caused by the increase that this adjustment added to the purchase price. Perry concedes that Maria will have a capital gain tax, but he claims the amount is not immediately determinable because it is an installment sale.[3] He therefore argues that the court was not required to consider the tax consequences because they were speculative, citing *In re Marriage of Fonstein,* 17 Cal.3d 738 [131 Cal.Rptr. 873, 552 P.2d 1169], *In re Marriage of Wilson,* 10 Cal.3d 851 [112 Cal.Rptr. 405, 519 P.2d 165]; and *Weinberg* v. *Weinberg,* 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709]. He also contends the tax obligation will be equalized if and when he sells his stock in the future and he in turn pays a capital gain tax.

It is now decisional law that the trial court shall consider the tax consequences when dividing community property when there is proof of an *immediate* and *specific* tax liability. (*Weinberg, supra,* at p. 567, and *Fonstein, supra,* at p. 749, fn. 5.) Clearly, the known tax obligation

[2]Maria received real property, personal property, and bonds and cash totaling $174,825. Perry received the stock valued at $400,000 and life insurance policies valued at $4,422 for a total of $404,422.

[3]The total capital gain tax on an installment sale may differ from a capital gain tax on a similar transaction where more than 30 percent of the purchase price is paid the first year. In an installment sale the tax is proportionately paid each year and varies according to the change in the yearly income of the seller.

against Maria's share of the community property reduces her distribution by approximately $33,000,[4] while Perry's community property remains the same. His argument that he *might* have a similar tax in the future if and when he sells his stock, therefore equalizing the tax burden on each party, is of no avail. In *In re Marriage of Fonstein, supra,* the husband asked the court to take into consideration the tax consequence of a sale of his interest in a law partnership sometime in the future. The court stated at pages 749-750: "However, as *Weinberg* makes clear, once having made such equal division, the court is not required to speculate about what either or both of the spouses may possibly do with his or her equal share and therefore to engraft on the division further adjustments reflecting situations based on theory rather than fact. The division, having been properly accomplished, is, as it were, functus officis; it is beside the point, to conjure up other results, had it been done differently. . . . [¶] While the parties assumed that the partnership would be valued on the basis of a withdrawal value, the fact remains that Harold was *not* withdrawing and no tax liability was incurred during marriage. There is therefore no liability to be charged to Sarane or against her share of the community property. (See *Rosenthal* v. *Rosenthal* (1966) 240 Cal.App.2d 927, 931 [50 Cal.Rptr. 385].) Moreover, since there is no indication in the record that Harold is withdrawing, must withdraw, or intends to withdraw from his firm in order to obtain the cash with which to pay Sarane her share of the community property, there is no equitable reason for allocating to Sarane a portion of the tax liability which may be incurred if and when he does withdraw." In our present case, because of the sale, we know Maria's tax liability exists. It is analogous to a mortgage or a lien against the community property and is deducted in determining the net value for distribution (see *Fonstein, supra,* at p. 749.) Perry's future tax liability, if any, is speculative and not comparable to a lien.

■ Perry's other argument, that the court should ignore the tax because an installment sale renders it speculative, must also fail. Perry agrees Maria will have a capital gain tax from the transaction and the exact amount (give or take a few dollars) could be determined at date of trial if it did not qualify as an installment sale; therefore, the inequity in forcing Maria to shoulder all of the tax because of the form of payment is obvious. Also patent are the problems such a concept would create. For example, settlement negotiations, already complicated and often emo-

---

[4]We were told at oral argument that this figure has changed considerably because of other factors discovered when a final accounting was attempted. We use the original figures merely as examples.

tionally distasteful, would become more so as the parties seek the advantage—or to escape the disadvantage—of this argument should we accept it. Courts should not hesitate to suggest guidelines for balancing the equities in a given situation where the judicial action is reasonable under the circumstances. Such a situation exists here. In most cases the capital gain tax does not exceed 30 percent (25 percent federal and 5 percent state) of the gain, and the total tax paid is often the same whether in one sum or in annual payments; however, as previously stated, it is true that under the present law there are exceptions. Although computation of the tax is sometimes beyond precise solution, equity between the parties can be substantially accomplished. In most cases a fair determination can be made if the court bases the capital gain tax on the transaction in question without considering the *other* income of the selling spouse (seller).[5] This would eliminate continued litigation on computation and free the court from future time-consuming problems. In order to equalize division of the community property, the buying spouse (buyer) should pay one-half of the capital gain tax caused by the transaction. This can be accomplished by the court in the most feasible manner, i.e., adjusting division of other community property, increasing the value of the installment promissory note, cash reimbursement, etc.

We recognize there are exceptions to every rule, especially in taxable transactions, and we cannot crystal-ball all of them. In unusual cases retention of jurisdiction is a possibility especially where the installment sale covers a short period of time. In such cases one suggested approach is for the court to order the buyer to pay to the seller one-half of the tax each year. Payment would be made after the seller has delivered to the buyer copies of his or her federal and state income tax returns for the year that capital gain income from the sale is received. The court's judgment, where possible, should include language that permits the parties to adjust the ongoing tax consequences without resort to the court.[6] The courts' jurisdiction should only be invoked when differences cannot be resolved.

[5]We are not saying the court cannot consider evidence on other income and other factors. The court should have wide latitude to consider all evidence available *at time of trial,* to determine as close as possible the full capital gain tax on the installment sale. This determination, however, should be the final order. Retention of jurisdiction solely to adjust tax changes, except as mentioned in the opinion, should be avoided.

[6]Experienced attorneys and accountants can normally determine the capital gain tax on an installment sale in a manner that would be reasonably fair to both parties. In most situations negotiated tax settlements with appropriate wording can be incorporated into the judgment.

## Valuation Of The Promissory Note

Maria next argues that the promissory note awarded her by the court to equalize division of the community property is worth less than its face value and thus further reduces her share of the community property (*In re Marriage of Tammen,* 63 Cal.App.3d 927, 930-931 [134 Cal.Rptr. 161].) The trial was held before the *Tammen* decision became final. Our Supreme Court, in *In re Marriage of Morrison,* 20 Cal.3d 437, 456 [143 Cal.Rptr. 139, 573 P.2d 41] has indicated that the *Tammen* rule could be applied retroactively. In a similar situation, it permitted the appellant on retrial to argue that the promissory note should be readjusted upward to reflect current market conditions. Because a partial retrial is necessary in this case, and a new promissory note will be required, Maria may raise this issue at that time. We are not inferring by this order, however, that the original promissory note was worth less than its face value. There were significant differences between it and the *Tammen* note. The issue, as it affects the new note, is for the trial court to decide.

## The Award Of Spousal Support

Maria's concluding argument is that the court abused its discretion in awarding her only $700 a month spousal support. Her basic contention is that Perry's income ($60,000 salary, $75,000 in dividends), after division of the community assets, is more than hers; therefore, this inequitable situation should be adjusted by increasing her support payments. Maria received approximately $175,000 in community assets, plus Perry's promissory note. There was testimony that this would produce a net monthly income to her of $1,830. In addition, she would receive $700 per month spousal support and $300 child support. Her filed financial declaration set forth an after-tax need for living expenses for herself and Christopher of $1,910 per month. ■ In *In re Marriage of Morrison, supra,* 20 Cal.3d 437, 454, the court said: "Although not unlimited, a trial court's discretion is broad in setting the amount of spousal support to be awarded upon dissolution of marriage. [Citations.] At the time of the interlocutory judgment in this case, trial courts were authorized by statute to award spousal support to either party in such amount as these courts deemed 'just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment. . . .' (Stats. 1971, ch. 1675, § 3, p. 3602.) [¶] In construing a predecessor statute (former Civ. Code, § 139), this court stated that the term 'circumstances,' 'includes "practically everything which has a legitimate bearing upon the

present and prospective matters relating to the lives of both parties." [Citation.] "[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings." [Citations.]' "

It appears that the trial court gave consideration to Maria's financial needs because it awarded her spousal and child support which, when combined with her other income, gave her the net monthly income requested. Perry, in addition to spousal and child support payments, must make payments on the promissory note and establish a $10,000 trust fund for the education of the minor child. There was no evidence that Precision's dividends will continue at the same rate. There was no testimony that previous to 1975 the dividends had been constantly high. Perry's future income is based on speculation. In view of the above facts, we cannot say that the trial court abused its discretion in not awarding Maria greater spousal support than her needs demanded. We note there is no cut-off date to the award; therefore, it is subject to modification if circumstances warrant.

The judgment is reversed and remanded for further proceedings consistent with the views expressed herein. Costs on appeal awarded to petitioner and appellant.

Stephens, Acting P. J., and Ashby, J., concurred.