[Civ. No. 44162. First Dist., Div. Two. Dec. 21, 1979.]

In re the Marriage of DELORIS R. and RONALD B. SLATER.
RONALD B. SLATER, Respondent, v.
DELORIS R. SLATER, Appellant.

COUNSEL

Lucille F. Athearn for Appellant.

Raymond N. Baker and Glenn P. Oleon for Respondent.

OPINION

TAYLOR, P, J.—On this appeal by the wife from an interlocutory judgment of dissolution, the contentions are that the court erred by: 1) setting a value of zero on the goodwill of the husband's group medical practice pursuant to the withdrawal provision of the partnership agreement; 2) equalizing the community property by awarding her a

five-year promissory note of $24,430; and 3) awarding her spousal support of only $750 a month. We have concluded that the judgment must be reversed for a redetermination of the value of the husband's interest in the group medical practice.

The record reveals the following pertinent facts: The parties were married in February 1958 and separated in December 1975, after 17 years, 10 months and 7 days. The wife was awarded custody of their three children, born respectively in 1960, 1962 and 1966, and husband ordered to pay child support of $250 a month per child until emancipation, majority or further order of the court. The husband, a gynecologist, had been practicing in a partnership (Hayward Medical Group) since 1954. The wife was unemployed and had no professional skills or work experience; she was attending college at the time of the judgment, studying to become a medical librarian or medical records keeper.

The parties stipulated to the valuation and division of most of the community assets.

The approximate difference between the total net awarded to the husband ($59,967.14) and the wife ($11,107.50) was the sum of $48,859.64. In order to equalize the community property division, the husband was ordered to execute a promissory note in favor of the wife for $24,430, with interest at the rate of 10 percent per annum, payable annually, and a due date of five years from July 1, 1977. The note was secured by a pledge of the husband's one-half interest in the partnership investments. All income accrued to the husband from the partnership investments was to apply first on account of accrued interest on the note and thereafter on account of reduction of principal. Further, in the event of the sale of any of the husband's interest in the partnership, the net proceeds would apply on account of accrued interest and the principal balance owing on the note until it was paid in full.

The husband was ordered to pay the wife $750 per month as spousal support until further order of the court or the wife's death or remarriage, whichever occurred first. The trial court also maintained jurisdiction over the matter.

The major contention on appeal focuses on the trial court's valuation of the husband's interest in the group medical practice at $31,350. The

record indicates that the wife's accountant determined that the husband's interest in the entire medical partnership was worth over $80,000, with $44,400 specifically attributed to goodwill. The husband relied on the partnership agreement signed by both him and his wife, which specifically provided that the husband's partnership could buy back his interest upon his death, withdrawal or expulsion. The relevant portion of the agreement read: "The purchase price shall be the . . . partner's interest in the capital account. . . plus the total of the accounts receivable less than six months old. . . . Capital account. . . shall mean supplies, inventory, equipment, fixtures, cash, securities. . . excepting accounts receivable. . . . The partners mutually agree that *a portion of the purchase price as determined above includes the sale of their interest in the goodwill of the partnership* and in the event of their withdrawal or expulsion from the partnership that they will not enter into the practice of medicine in that portion of Alameda County. . . for a period of three years" (italics added).

The parties stipulated that at the time of the dissolution, the husband's share of the capital account was $6,100 and his share of the accounts receivable, less than six months old, was the sum of $25,250, or a total of $31,350. The husband and his witnesses indicated that the goodwill was nonexistent as far as the partnership was concerned. Goodwill was considered to be in the accounts receivable which a partner forfeited upon withdrawal. ■ We reject the husband's irrelevant contention that the wife was bound by the terms of the agreement that she cosigned. The agreement was not signed for purposes of the dissolution.

As indicated above, the trial court found that the value of the husband's medical practice was $31,350. The record indicates that the court concluded that it could not value the goodwill on a different basis because "if he [husband] left the partnership. . . he would not receive that goodwill." Thus, the record indicates that the trial court felt constrained to value the husband's interest in the partnership as a withdrawal right with a goodwill of zero. However, the asset being divided in the proceeding was the husband's interest in the partnership, not his contractual withdrawal rights. His interest in the partnership was an interest in a going business analogous to pension rights (*In re Marriage of Fonstein,* 17 Cal.3d 738, 745-746 [131 Cal.Rptr. 873, 552 P.2d 1169]).

The trial court's declaration is readily understandable since, as this court (Div. One) noted in *In re Marriage of Foster,* 42 Cal.App.3d 577, at page 583 [117 Cal.Rptr. 49]: "The courts have not laid down rigid and unvarying rules for the determination of the value of goodwill but have indicated that each case must be determined on its own facts and circumstances and the evidence must be such as legitimately establishes value. (*Burton* v. *Burton, supra,* [161 Cal.App.2d 572], at p. 577 [326 P.2d 855]; *Mueller* v. *Mueller, supra,* [144 Cal.App.2d 245] at p. 251 [301 P.2d 90]; see *In re Marriage of Fortier, supra,* 34 Cal.App.3d 384, 389 [109 Cal.Rptr. 915].) In establishing value of goodwill opinion evidence is admissible but is not conclusive. (*Burton* v. *Burton, supra,* 161 Cal.App.2d, p. 576.)"

In *Foster, supra,* 42 Cal.App.3d 577, this court also cautioned at page 584: "The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. *Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage.* As observed in *Golden* [v. *Golden,* 270 Cal.App.2d 401, 405 (75 Cal.Rptr. 735)], '. . . in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business'" (italics added).

It does not follow, however, that the trial court was required to adopt the $44,400 figure provided by the wife's accountant. The record indicates that the wife's accountant valued the goodwill of the husband's practice "as an accounting concept." For purposes of a marital dissolution, the parties are primarily concerned with the existence, value and consequences of goodwill in an economic sense, as distinguished from legal or accounting concepts. The expectancy of future earnings is not synonymous with, nor shall it be the basis for determining the value of the goodwill of a professional practice (*In re Marriage of Lopez,* 38 Cal.App.3d 93, 108-109 [113 Cal.Rptr. 58]). The same is true of the future contingencies, such as withdrawal, expulsion or death. The value

of the contractual withdrawal right *may provide a basis* for ascertaining the value of the community interest (cf. *Marriage of Fonstein, supra,* 17 Cal.3d at p. 745); however, it does not preclude a consideration of other facts.

The record also indicates that the wife's accountant erroneously included some of the husband's postdissolution earnings. As this court (Div. One) held in *Foster, supra,* 42 Cal.App.3d, at page 584: "In sum we conclude the applicable rule in evaluating community goodwill to be that such goodwill may not be valued by any method that takes into account the post-marital efforts of either spouse but that a proper means of arriving at the value of such goodwill contemplates any legitimate method of evaluation that measures its present value by taking into account some past result. Insofar as the professional practice is concerned it is assumed that it will continue in the future." Thus, we can only conclude that the judgment must be reversed for a corrected evaluation of the husband's interest in the group medical practice.

We proceed to determine the remaining contentions on appeal. The wife next contends that the trial court erred in awarding her a five-year promissory note for $24,430 to equalize the division of community property. She complains that: 1) the note is not to be paid off for five years; 2) interest is only to be paid annually; and 3) the security for the note is the husband's one-half interest in the various partnership investments. We observe that the record indicates that the wife suggested a five-year note.[1] Accordingly, under the doctrine of "invited error," the wife cannot complain on appeal of terms that she herself has proposed to the court below (*Kraus* v. *Willow Park Public Golf Course,* 73 Cal. App.3d 354, 374-375 [140 Cal.Rptr. 744]; *Smith* v. *Royal Mfg. Co.,* 185 Cal.App.2d 315, 320 [8 Cal.Rptr. 417]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 266-267, pp. 4257-4258).

Thus, we need consider only the wife's remaining contentions pertaining to the note, namely, that: 1) the probable effect of inflation makes its value uncertain; 2) the value of the note is its discount value and not its face value; and 3) the award of the note in lieu of a property division constitutes a sale which is a taxable event upon which the wife incurs a tax liability and a sum should be added to compensate her for this liability.

---

[1]The wife in her trial brief suggested a five-year term for any note in the amount necessary to equalize the division of community property.

Upon the dissolution of a marriage, the trial court is required to divide the community property equally between the parties (Civ. Code, § 4800, subd. (a)). However, where economic circumstances warrant, the trial court has the discretion to award any asset to one party on such conditions as it deems proper to affect a "substantially equal division of the property" (Civ. Code, § 4800, subd. (b)(1); *In re Marriage of Tammen*, 63 Cal.App.3d 927, 930 [134 Cal.Rptr. 161]).

Here, as indicated above, the community assets were divided pursuant to the stipulation of the parties; to equalize the division of community property, the trial court ordered the husband to provide the wife with a promissory note for $24,430. The wife now claims that, in fact, the note is worth less than its face value and, therefore, cannot equalize the division of community property. The wife relies on *In re Marriage of Tammen, supra.* In *Tammen*, the court found that a seven-year $19,000 promissory note was worth less than its face value as the note bore simple interest at 7 percent, was secured by a second deed of trust on the family residence subject to a previous lien, and neither the interest nor principal were payable for 10 years or upon the occurrence of specific uncertain contingencies.

In the instant case, however, the wife will receive the entire amount of the promissory note ($24,430), plus interest, at the very latest in five years. This is not a long and uncertain deferment of the wife's enjoyment of the award. Furthermore, the note was to bear interest at the rate of 10 percent per annum with the interest payable annually. It was secured by a pledge of the husband's one-half interest in the partnership investments. All income accruing to the husband from the partnership investments was to apply toward paying the interest first and then the principal on the note. In the event of any sale of the husband's interest in the partnership, the net proceeds were to be applied first to the payment of the interest and principal on the wife's note. Thus, the instant record indicates that the trial court took great care to insure that the note would be paid in full to the wife as soon as possible. ■ Here, unlike the authorities cited by the wife, the promissory note was not, as a matter of law, worth substantially less than its face value. Furthermore, the 10 percent interest and short payment period adequately compensate for inflation possibilities.

The wife also maintains that the promissory note does not equalize the division of community property, as the court failed to consider the

tax liability she will incur. To the extent that pursuant to a decree of dissolution one party receives separate cash or other separate property, rather than community assets, in exchange for a portion of that party's community property, that party has sold or exchanged such portions and gain, if any, must be recognized (*In re Marriage of Brigden,* 80 Cal.App.3d 380 [145 Cal.Rptr. 716]; *In re Marriage of Clark,* 80 Cal. App.3d 417 [145 Cal.Rptr. 602]). ■ However, before tax consequences may be considered in a division of community property, there must be proof of an immediate and specific tax liability (*In re Marriage of Fonstein, supra,* 17 Cal.3d, p. 749, fn. 5; *Weinberg* v. *Weinberg,* 67 Cal.2d 557, 566-567 [63 Cal.Rptr. 13, 432 P.2d 709]). Here, the wife adduced no evidence of immediate and specific tax liability as a result of the award to her of the promissory note.

*Brigden* and *Clark, supra,* are readily distinguishable. In *Brigden,* 80 Cal.App.3d at pages 392-393, the court held that community stock should be divided in kind, but did not address the issue of whether taxes must be taken into account where it is impossible to divide the community asset in kind. In *Clark,* no adjustments at all were made for tax liability. The trial court is not required to speculate on tax possibilities that may or may not arise (*In re Marriage of Fonstein, supra,* 17 Cal.3d, p. 748; *Weinberg* v. *Weinberg, supra,* 67 Cal.2d, p. 566). Thus, the court here did not abuse its discretion in failing to make a tax adjustment in the award, as there was no evidence of an immediate and specific capital gains tax liability to the wife resulting from the decree (*Brigden, supra,* 80 Cal.App.3d 380).

■ Finally, the wife contends that the trial court abused its discretion in awarding her spousal support of only $750 per month. She relies on the well known criteria set forth in *In re Marriage of Lopez, supra,* 38 Cal.App.3d, 115-117. The established rule is that wide discretion is vested in the trial court for determining the amount of an award for spousal support (*Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249]; *In re Marriage of Norton,* 71 Cal.App.3d 537, 541 [139 Cal.Rptr. 728]; *In re Marriage of Lopez, supra,* 38 Cal.App.3d, p. 114). The record indicates that the husband's net income was approximately $38,000 a year and was subject to some fluctuation. The husband's business expenses were $4,890 a year; other expenses included $350 per month spousal support to a previous wife and child support of $250 per month for each of the three children of the parties.

The wife testified that her monthly expenses totaled $2,922. She was not able to provide a precise breakdown of all expenses. She requested spousal support of $1,500 a month[2] but did not establish a need for this amount other than that the husband had been helping her with miscellaneous expenses related to the children. The wife was unemployed and taking college classes to become a medical records technician.

The award of spousal support to the wife of $750 per month appears just and reasonable, having regard for the circumstances of the respective parties (Civ. Code, § 4801, subd. (a)). It certainly cannot be said that after a calm and careful reflection of the entire record, no judge reasonably could have made the same order (*In re Marriage of Norton, supra*, 71 Cal.App.3d, at p. 541; *In re Marriage of Lopez, supra*, 38 Cal.App.3d, p. 114). Furthermore, the trial court did not divest itself of jurisdiction on this matter nor was a specific date set for termination of the spousal support (but see *In re Marriage of Rosan*, 24 Cal.App.3d 885, 891 [101 Cal.Rptr. 295]; *In re Marriage of Norton, supra*, pp. 541-542). If circumstances change, the wife will be able to seek a modification of her support from the court (Civ. Code, § 4801, subd. (a)).

The trial court's decision is reversed for a reconsideration of the value of the husband's interest in his medical partnership. If necessary, the trial court may admit additional evidence on this issue.

Rouse, J., and Miller, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 14, 1980.

---

[2]We note that here, the wife received $1,500 a month: $750 spousal support, and $750 child support.