[Civ. No. 26258. Fourth Dist., Div. One. June 7, 1983.]

In re the Marriage of HELEN D. and JAMES R. SHARP, JR.
HELEN D. SHARP, Appellant, v.
JAMES R. SHARP, JR., Respondent.

---

**COUNSEL**

Charles C. Renshaw for Appellant.

James B. Burns for Respondent.

---

**OPINION**

**STANIFORTH, J.**—Plaintiff Helen D. Sharp (wife) appeals trial court orders disbursing community assets in this dissolution proceeding. She contends a corporation, jointly owned with James R. Sharp, Jr. (husband), was improperly valued because the trial court deducted a gross sum for income tax consequences where there was no proof of immediate and specific tax liability. The wife also contends the court should have accounted for her capital gains tax liability imposed as a result of an award of stock shares as community property. Finally, she complains of the legal standards used in evaluation of the community business and denial of her attorney fees for this appeal.

### FACTS

The husband operated a community owned business selling and buying aircraft parts. This business (Sharp and Company) was set up as a "disc" corporation (a domestic international sales corporation). The corporation itself does not pay any income tax. The earnings of the disc corporation are taxed personally to the stockholder when the income is distributed to the shareholder or upon sale of the shareholder's stock. The trial court in evaluating this business as a community asset took into consideration what the tax consequences or liabilities might be if the business or the stock were sold.

### DISCUSSION

### I

The wife contends this ruling is in direct violation of the rule stated in *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 748 [131 Cal.Rptr. 873, 552 P.2d

1169]: "'Although there will be tax consequences if defendant satisfies the judgment by withdrawing funds from the corporations or selling some of his stock, there is no indication that he must or intends to do either to satisfy the judgment. He may choose to borrow the money or make the payments out of other property. Of course, once the property is divided pursuant to the trial court's order, the future tax consequences may vary on further sale or liquidation from what they would have been had the property been divided differently. The trial court need not speculate on such possibilities, however, or consider tax consequences that may or may not arise after the division of the community property.' [Citations.]"

The court here reduced its valuation of the corporate stock by the amount of income tax the husband might have to pay in the event of sale of the stock or distribution of income.[1]

■ This manner of determining value violates the rule set out in *In re Marriage of Slater* (1979) 100 Cal.App.3d 241, 249 [160 Cal.Rptr. 686]: "[B]efore tax consequences may be considered in a division of community property, there must be proof of an immediate and specific tax liability [citations]." What tax consequences might result five or ten years down the road is not a proper consideration. (*Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 562 [63 Cal.Rptr. 13, 432 P.2d 709].) Expert testimony showed a deferred tax liability of $203,776 existed but was payable contingent upon certain events, including disposition of corporate stock by a shareholder at a gain. After deducting this contingent tax liability, the court declared the fair market value of the corporation was $173,000.

The husband contends *In re Fonstein, supra,* 17 Cal.3d 738, is distinguishable because the trial court was not dealing with mere contingencies but "inevitable exactions." He cites his tax expert as the sole source of evidence on this point. The husband argues not only is the amount of tax in evidence but the time of incurring the tax liability was before the court, i.e., whenever a shareholder disposes of disc stock at a gain. He then asserts the wife would be disposing of her disc stock at a gain in this court-ordered disposition. Thus the "purchase" or "sale" is the court-ordered disposition of the stock—the wife's community one-half—through the marriage dissolution proceedings. This he refers to as "petitioner's selling price."

The husband correctly cites authority holding division of community property between parties is not a taxable event but "'[t]o the extent, therefore, that

---

[1]Said the trial court: "Now, I'd like to come back to this for a minute. The $203,761 deferred income taxes. If anything happened to trigger the disqualification of this corporation, such as selling it or improperly transferring the stock, anything of that nature, this $284,900 is going to be taxed to the shareholder, Mr. Sharp."

one party receives [pursuant to a divorce decree] separate cash or other separate property, rather than community assets, in exchange for portions of his community property, he has sold or exchanged such portions and gain, if any, must be recognized thereon.'" (*Carrieres* v. *Commissioner of Internal Revenue* (9th Cir. 1977) 552 F.2d 1350, 1351; see also *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 395-396 [145 Cal.Rptr. 716].)

The husband contends he is required to resort to his separate property consisting of shares of stock—investments—and therefore argues there is a disposal—sale—by the wife of her stock in the community corporation for a gain and therefore the tax liability of $203,761 was immediately incurred. How a tax liability in this amount could be incurred by the wife's acquisition of $27,144.50, her community one-half interest in the corporate stock as found by the trial court, is not clear. There is in fact no "sale" as is contemplated by *Carrieres, supra,* 552 F.2d 1350, or *In re Marriage of Brigden, supra,* 80 Cal.App.3d 380, that could result in a tax liability of $203,761. If, as the husband contends, he has resorted to separate property[2] and a taxable gain has accrued, then only to the extent the gain has in fact occurred must it be recognized. (*Carrieres* v. *Commissioner of Internal Revenue, supra,* 552 F.2d at p. 1351.) Further, to impose the potential tax burden—if there be any—solely on the wife results in a "drastic inequality" (see *In re Marriage of Brigden, supra,* 80 Cal.App.3d at p. 396) which must be resolved equitably by the trial court to comply with the Civil Code section 4800 mandate to divide community property of the parties "equally."

## II

■ The wife also complains the trial court erred in not taking into account the possibility of the wife's capital gains tax. *In re Marriage of Clark* (1978) 80 Cal.App.3d 417 [145 Cal.Rptr. 602], held the trial court erred in failing to adjust for a wife's capital gains tax liability and rejected the husband's contention the transaction was an "installment sale," with speculative tax liability.

Civil Code section 4800, subdivision (b)(1), states: "Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property." To effect this equal division rule the trial court should consider tax consequences in dividing community property *"when there is proof of an immediate and specific tax liability."* (*Clark, supra,* at p. 422; italics added.) Here (in contrast to the claim of tax liability discussed in I *ante*) the wife's capital gains tax obligation was known and certain based upon the increased value of the cor-

---

[2]Whether the husband's separate property will be in any way involved in the disposition of the corporate asset on hearing after remand of this cause is wholly speculative at this time. The law is reviewed only to assist the trial court.

porate shares she received. A capital gains tax will be due and payable and thereby reduce her share of the community property by the amount of the tax while the community asset received by the husband remains the same. The fact the husband might have a similar tax in the future if and when he sells his stock—therefore equalizing the tax burden on each party—is of no avail. (*In re Marriage of Clark, supra,* at p. 423.) Whether this tax consequence will descend upon the husband is speculative. Courts have frequently said speculation about what either or both spouses may possibly do with his or her equal share of the division in the future is unnecessary. "While the parties assumed that the partnership would be valued on the basis of a withdrawal value, the fact remains that [the husband] was *not* withdrawing and no tax liability was incurred during marriage." (*In re Marriage of Fonstein, supra,* 17 Cal.3d 738, 750.) The husband here has not withdrawn, is not required to withdraw or shown he intends to withdraw his stock interest, therefore there is no equitable reason for allocating a portion of the tax liability which may occur if and when he does withdraw to the wife. The wife's withdrawal is present and immediate and the tax consequences certain; therefore the trial court erred in its failure to take account of the capital gains tax consequence of this distribution to the wife. In order to equalize the division of the community property, the capital gains tax should be borne equally by both spouses. (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 87, 88 [154 Cal.Rptr. 413, 592 P.2d 1165]; *In re Marriage of Clark, supra,* 80 Cal.App.3d 417, 424.)

### III

■ The wife contends the trial court erred in valuation of community property, citing this basic rule: "The value of personal property is its market value. Market value supplies a relatively objective and easily administered basis of valuation that no other method can supply." (2 Markey, Cal. Family Law Practice & Pleadings, § 24.45, pp. 24-50, fns. omitted.) The trial court evaluated the business as a "going business." In so doing it distinguished market value, stating specifically market value was not the only measure of value.

Is a "going concern" or "going business" value in fact a determination of the "market value" of that business? The use of a "going business" concept as an equivalent to market value is not sound evaluation methodology. It does not have the same meaning and relevance as the fair market value concept. The term "going business" or "going concern" is applied to a business or corporation which is still pursuing its business with the prospect of continuing to do so even though for example its assets may be insufficient to pay its debts. (Black's Law Dict. (4th ed.) p. 821.) The California Supreme Court in *Pacific States Sav. & L. Co.* v. *Hise* (1945) 25 Cal.2d 822, 837 [155 P.2d 809], discusses the concept of a "going concern" as an element of value. The concept means "the amount by which the value of the assets as a whole, assembled together for the

conduct of a business, exceeds the aggregate of the value of the separate items of property." (*Ibid.*) This is the generally accepted meaning of the "going concern" or "going business" value. (See *Banco Nacional de Cuba* v. *Chase Manhattan Bank #1* (S.D.N.Y. 1980) 505 F.Supp. 412, 459, cert. granted *First Nat. City Bank* v. *Banco Para El Comercio Exterior* (1982) 459 U.S. 1098 [74 L.Ed.2d 198, 103 S.Ct. 253]; *Goodman* v. *United States* (E.D.Mich. 1981) 512 F.Supp. 155, 160.)

The trial judge used a concept which is not the equivalent to fair market value. Upon remand the assets should be revalued in light of the proper rule of law.[3]

## IV

■ Finally, the wife contends the trial court erred in denying her attorney fees. The wife is not employed and does not have any outside income. "It is clear that a former wife is not required to impair her capital in order to finance marital dissolution litigation." (*In re Marriage of Stachon* (1978) 77 Cal. App.3d 506, 509 [143 Cal.Rptr. 599].) Upon remand and further hearing in this matter, the trial court is directed to determine and award an appropriate fee to cover the cost of the wife's attorney fees on this appeal.

Judgment reversed and remanded for proceedings consistent with this opinion.

Brown (Gerald), P. J., and Cologne, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 7, 1983.

---

[3]As to details for evaluation of the fair market value of stock in the closely held corporation see *In re Marriage of Lotz* (1981) 120 Cal.App.3d 379, 384 [174 Cal.Rptr. 618]; *Estate of Rowell* (1955) 132 Cal.App.2d 421 [282 P.2d 163]; *Common Wealth Ins. Systems, Inc.* v. *Kersten* (1973) 40 Cal.App.3d 1014, 1031 [115 Cal.Rptr. 653]; Kragen, *Some Thoughts on the Valuation of Closely Held Business Interests* (1955) 43 Cal.L.Rev. 781, 786.