Filed 6/25/13  Marriage of Farida CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of ROSE and RAGHAD FARIDA. | D060705 |
| ROSE FARIDA,<br><br>Respondent,<br><br>v.<br><br>RAGHAD FARIDA,<br><br>Appellant. | (Super. Ct. No. ED74696) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Stephen Temko for Appellant.

Law Office of Anthony J. Boucek, Anthony J. Boucek; Law Offices of Stanley J. Bacinett and Stanley J. Bacinett for Respondent.

Because neither party in this family law case was completely forthcoming with

respect to the amount of appellant's income, much of it apparently in cash received from appellant's retail liquor business, the family court determined the income available to appellant for child and spousal support purposes based on the court's estimate of the family's living expenses prior to separation and the fact that during the marriage appellant was the sole source of financial support for his family. The court's estimate of the family's living expenses is fully supported by the record, and given the record available, was a reasonable means of determining appellant's income.

Given the family court's reasoning, which is supported by the record and was reasonable, the family court was not required to break down in detail charges it believed were attributable to household expenses which appeared on appellant's business credit card. The family court's statement of decision makes it clear the credit card charges, while they showed the parties routinely commingled business and household expenses, were not the basis for the court's determination of the amount of income available to appellant. Indeed, in its statement of decision, the family court agreed with appellant that most of the credit charges were business related. Because the family court did not rely on the credit card charges in determining the amount of appellant's income, it was not required to make any subsidiary finding as to those charges.

We also reject appellant's contention the family court should have permitted him to sell the community's interest in the liquor store to his brother and then divide the proceeds with respondent rather than, as the court directed, pay respondent one-half the appraised value of the business. The family court has wide discretion in the means by

2

which it divides community assets, and it did not abuse its discretion in requiring payment to respondent of what it believed was one-half the value of a major asset of the community.

We also reject appellant's claims that the family court erred in denying his request for *Watts*[1] credits, in making an award of attorney fees to respondent and in denying his claim for reimbursement of credit card charges.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Marital Income and Expenses*

Rose Farida and Rocky Farida were married in January 1997 and separated in July 2008. During their marriage they had two sons: Tristan, who was born in 1998, and Aiden, who was born in 2003.

The record shows that during the marriage Rocky devoted himself to managing a family owned business, Par Liquor, which was quite successful. During the marriage, Rocky's work at Par Liquor permitted him to purchase a newly-constructed $498,500 home for the family in 2002, drive a luxury car, purchase a luxury car for Rose and place both children in private schools. The proceeds of the business also permitted Rose to forego work outside the home and provide full-time care for her children and husband.

In addition to making a $150,000 down payment on the family residence, furnishing it and landscaping the yard, Rocky's work in the family business also permitted him to invest with his brother in a car wash and acquire a commercial lot on

---

[1] See *In re Marriage of Watts* (1985) 171 Cal.App.3d 366.

which they planned to develop a fast food restaurant.

At the time Rose and Rocky separated in 2008, they had no debt other than the mortgage on their home, which Rocky had substantially reduced at one point by making additional principal payments. Rocky, Rose and the children had health care coverage provided under a policy obtained by the family business. The record shows Rocky paid many of his household obligations, including the mortgage, taxes and insurance, with money orders he purchased with cash and, in addition, Rose used an American Express credit card, which was issued in the name of the family business, to pay for a substantial amount of the family's monthly expenses, including travel, food, clothes and entertainment. However, the record also shows Rocky used the American Express account to pay for large portions of the store's inventory and supplies.

2. *Trial of Contested Issues*

The parties were unable to reach an agreement with respect to child and spousal support, division of the community's interest in the family business, Rocky's reimbursement claims, and Rose's request for attorney fees. Following a trial, the family court resolved these issues largely in favor of Rose and filed a statement of intended decision (SID).

With respect to child and spousal support, the family court found that Rocky had a monthly income of $10,000 composed of his conceded $2,000 salary from the liquor store, dividend income of $745, rental income of $1,100 and untaxed or nontaxable income of $6,155.

The SID stated that: "The parties chose to live in an attractive home, drive nice cars, place their children in a private school, and enjoy leisure time outside of San Diego as [Rocky's] work schedule permitted, all of which was paid for in cash or money orders from Respondent's liquor store."

In explaining how it reached its conclusions about Rocky's income, the SID stated: "[Rocky's] income has been a recurring issue throughout this litigation and remains the most vexing challenge to the court. Though both parties were integrally involved in the community's finances -- either making it, spending it, or both -- the court has been left with the distinct impression that neither party is motivated to disclose the true extent of his/her knowledge of [Rocky's] income (and the corresponding duty to make appropriate representations to the taxing authorities). The court is limited to arriving at a reasonable estimate, based on the evidence -- vague and ambiguous as it may be, of [Rocky's] income."

In its principal conclusion about Rocky's income, the SID stated: "[Rocky's] liquor store is literally and figuratively a cash cow. Though [Rocky] has chosen to downsize his lifestyle (evidenced, in part, by [Rocky] living with the paternal grandparents), the Court is persuaded that the income available to [Rocky] to pay support at this time is more, rather than less, consistent with the income which was available to [Rocky] to support the community lifestyle before the parties separated in July 2008."

Because it had been a contested issue at trial, the SID also made findings with respect to the parties' use of the liquor store's American Express card: "The liquor store's

5

payment of [Rose and Rocky's] personal expenses constitutes constructive income available to [Rocky] to pay support. . . . At the urging of [Rocky's] counsel, the Court has reviewed the individual charges reflected in Exhibit '97' and found that a substantial percentage of the charges were devoted to purchases for the liquor store rather than, as argued by [Rose], entirely personal in nature to benefit [Rose and Rocky]."

Rocky objected to the SID and, in particular, asked the family court to make specific findings with respect to which American Express charges, as reflected in Exhibit 97, were for personal or family expenses and which were business related. In rejecting Rocky's request for more specific findings with respect to the credit card charges, the family court stated: "[Counsel], you persuaded me in at least one respect, and that was to spend meaningful time reviewing how much, if any, of the expenses reflected in [Exhibit] 97 could be constructively charged to Mr. Farida as income. . . . Ms. Farida said that when she used the card, those were personal expenses; generally speaking, not always, when Mr. Farida used the card, it was more to pay business expenses, and you gave me some meaningful examples, like Costco. And as I was going through 97, there were a whole bunch of entries which were charged by Ms. Farida. To the extent that those charges were put on the card by her, I tended to view those as personal expenses that were paid for by the business, but there were a bunch of expenses, many times in amounts much greater than the personal expenses charged by Ms. Farida, but these other expenses were put on the card by Mr. Farida, which I tended to view as business expenses paid for by the business and not chargeable as income to Mr. Farida."

6

Accordingly, "after having been persuaded by you, [counsel], I was no longer comfortable that that would be an appropriate tool by which to evaluate or identify or come up with some way that would be a reflection upon Mr. Farida's income. So, I'm not inclined to go through item by item as you requested."

In light of its decision not to provide more detailed findings, the family court filed as its final statement of decision a slightly amended version of the SID and entered a judgment according to its terms. Rocky filed a timely notice of appeal.

DISCUSSION

I

In his principal argument on appeal, Rocky argues the family court abused its discretion in failing to make detailed findings with respect to the American Express credit card charges. We find no error.

"The specific rules concerning the adequacy of a statement of decision are derived from the Code of Civil Procedure. Section 632 requires a statement of decision to explain 'the factual and legal basis for [the] decision as to each of the principal controverted issues' of the case.

"Appellate review of a statement of decision is addressed in Code of Civil Procedure section 634: 'When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on

7

appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue.'"[2] (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513, fn. omitted (*Central Valley General Hospital*).)

Sections 632 and 634 require no more than that a statement of decision fairly disclose "determinations as to the ultimate facts and material issues in the case." (*Central Valley General Hospital*, *supra*, 162 Cal.App.4th at p. 513.) "When this rule is applied, the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim. [Citation.] Ultimate facts are distinguished from evidentiary facts and from legal conclusions. [Citations.]" (*Ibid.*; see also *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559 (*Yield Dynamics*) [ultimate fact is fact "without which the claim or defense must fail"].)

Here, the family court's statement of decision plainly disposed of the core issue: Rocky's monthly income. Moreover, as we indicated at the outset, this finding is amply supported by evidence of the parties' fairly comfortable and somewhat affluent lifestyle. In particular, we note that on Rocky's income the family was able to acquire substantial assets, and aside from a home mortgage, remain debt free and place both children in private schools. In our view, given these circumstances, the family court's estimate that Rocky had $10,000 in income available to him was, if anything, somewhat conservative.

Contrary to Rocky's argument on appeal, section 634 does not require that we reverse the family court's order. As applied to the parties' dispute over the American

_____

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Express credit card, section 634 merely prevents us from presuming the family court resolved the credit card dispute in Rose's favor. If resolution of the credit card dispute were needed to determine Rocky's income, there would of course be a problem. However, the statement of decision, as well as the statement the family court made later when it denied Rocky's request for further findings, make it clear the family court resolved the ultimate question of Rocky's income without reference to the credit card dispute, and that determination is supported by substantial evidence. Because further findings on the credit card issue are not needed to support the family court's income determination and judgment, the family court's unwillingness to provide them, and the presumption altered by section 634, are of no consequence on appeal.

## II

Next, Rocky argues the trial court abused its discretion in awarding the community's interest in the corporation which owned the liquor store, Farida Brothers, Inc., to Rocky and ordering that Rocky make a compensating payment of $179,000 to Rose. Rocky argues the family court should have instead ordered the community's interest in the business be sold to his brother Raad, who was the majority owner of the corporation's stock, and the proceeds of the sale then be distributed equally to each party. We find no abuse of discretion.

In applying the statutes and rules governing division and distribution of community property, "trial courts possess broad discretion to determine the manner in which marital property is divided in order to accomplish an equal division. [Citation.]

9

Likewise, as long as its determination is within the range of the evidence presented, the court possesses broad discretion to determine the value of community assets. [Citation.]" (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 88.)

Significantly, Family Code section 2601 provides: "Where economic circumstances warrant, the court may award an asset of the community estate to one party on such conditions as the court deems proper to effect a substantially equal division of the community estate." Thus,"where only one spouse is capable of operating the business, it is appropriate to award the business to him or her, rather than sell it off to a third party or order an in-kind division in favor of a spouse whose lack of experience could impede the business success." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶ 8:1053, p. 8-248.2.) This rule was applied in *In re Marriage of Burlini* (1983) 143 Cal.App.3d 65, 70-71, *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 750-751, and *In re Marriage of Clark* (1978) 80 Cal.App.3d 417, 421, which are all cases where one spouse was the active and dominant participant in a family-owned business. In *In re Marriage of Burlini*, a coin-operated laundry business was awarded to the husband who had years of experience maintaining the business's aging washers and dryers; in *In re Marriage of Smith*, the husband was awarded the community's sign-making business because the wife did not have any of the technical skill needed to run the business; and in *In re Marriage of Clark*, the husband was awarded the community's one-half interest in a closely held corporation operated by the husband and his business partner because the business partner was unwilling to go

10

forward with the wife as a minority owner.

Here, the circumstances also fully justified an award of the Farida Bros., Inc. stock to Rocky. The value of the stock consisted mainly of the value of the liquor store, to which Rocky had devoted most of his time while Rose stayed home with their children. The liquor store also appeared to be Rocky's principal source of income. We also note the majority interest in the corporation appeared to be owned by Rocky's brother. Given all these circumstances, the family court could reasonably conclude that it was not practical for Rose to have a minority interest in a business controlled by Rocky and his family and in which she had limited experience.

The family court could reasonably reject Rocky's suggestion the community's interest in Farida Bros., Inc. be divided between him and Rose and then sold to his brother at the appraised value and the proceeds divided. Rocky offered this disposition for the first time at the time of trial and relied on Raad's testimony to the effect Raad was willing to buy Rocky and Rose's interest in the business. The family court rejected the suggestion because it found that the late offer was not entirely credible in light of Rocky's substantial contributions to the family business over 10 years, Rocky's motivation for making the suggestion at the time of trial and thereby reducing the income attributable to him from the business, and the absence of corroboration beyond Raad's testimony at trial.

The record fully supports the family court's reluctance to treat the proposed sale to Raad as bona fide. Plainly, there were ample opportunities prior to trial to make and corroborate the details of a sale to Raad and permit Rose to prepare a response to such a

11

disposition. In this regard, we note Rocky's last-minute suggestion posed the obvious risk of further proceedings in the event Raad was later unwilling or unable to complete the purchase. Rocky's tardiness in making the proposal, and the risks it posed to Rose with respect to one of the marital community's principal assets, would give pause to any reasonable finder of fact.

We are not persuaded by Rocky's additional contention that in awarding the business to him and requiring an offsetting payment to Rose, the family court unfairly exposed him to a potentially higher tax burden upon any eventual sale of the business. Because the family court was not in any sense required to accept Rocky's argument that he desired or would be forced to sell his interest to his brother, the family court was not required to consider the tax consequences of such a sale. (See *In re Marriage of Clark*, *supra*, 80 Cal.App.3d at p. 422 [tax consequences pertinent only when they are immediate and specific].)

In sum, the family court acted well within its discretion in its disposition of the community's interest in Farida Bros., Inc.

### III

Next, Rocky claims the family court erred in failing to determine whether the community was entitled to reimbursement from Rose for the rental value of the family home following separation and before trial. (See *In re Marriage of Watts*, *supra*, 171 Cal.App.3d at p. 374 (*Watts*).)

Rocky argued in the family court that the monthly rental value of the home

12

exceeded the cost of the mortgage, insurance and taxes by $696 and that given Rose's exclusive use of the home prior to trial, *Watts* required that she reimburse the community $12,528. At trial, the family court stated that it was inclined to deny Rocky's request for *Watts* credits because in addition to Rose, the home was occupied by the parties' two minor children. The family court's rationale was reasonable under the circumstances. (See *Watts*, *supra*, 171 Cal.App.3d at p. 374 [court may consider all circumstances in determining whether spouse had exclusive possession of marital home].)

Although the family court's SID did not expressly address Rocky's request for a *Watts* reimbursement, thereafter, in its final statement of decision, the family court formally and expressly denied Rocky's request for *Watts* credits. On appeal, Rocky contends the statement of decision is inadequate because it does not more fully set forth the family court's reasoning in denying his claim for reimbursement.

We reject Rocky's contention that the final statement of decision was inadequate. The statement of decision expressly addresses and rules on the ultimate question presented, to wit: Rocky's request for a *Watts* reimbursement credit. In the case Rocky relies upon, *In re Marriage of Bell* (1996) 49 Cal.App.4th 300, 311, the family court failed entirely to address a party's request for *Watts* credits. Moreover, because it is clear from the family court's statement at trial that any fuller explanation of the court's reasoning would not alter its resolution of the issue, any inadequacy in its later statement of decision was harmless. (See *McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 996.)

13

IV

Next, Rocky contends the family court erred in awarding Rose $8,000 of her $25,000 request for attorney fees. Contrary to Rocky's argument, the record shows a clear disparity in net income between the parties, especially in light of Rose's expenses in maintaining the family home. Moreover, notwithstanding Rocky's argument to the contrary, the family court could rely on its own experience and observation of the proceedings in concluding that in fact substantial and reasonable legal services were rendered to Rose. (See *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 301.)

V

Finally, Rocky argues that, although he charged his attorney fees to the liquor store credit card, Rose should reimburse him for $17,000 in attorney fees he believes she placed on the card and which were eventually paid from liquor store receipts. Again, we find no error. Given the parties intermingling of household and business expenses, both as reflected in their use of the credit card and cash from the business, the record does not show that Rocky's payment of the credit card debt from the liquor store receipts established any right to reimbursement. On this record we have no means of determining whether the funds used to pay the credit card debt were separate or community property.

14

DISPOSITION

The judgment is affirmed.  Rose to recover her costs on appeal.


BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


IRION, J.

15