NORTHERN NATURAL GAS COM-
PANY et al., Appellant,

v.

UNITED STATES of America,
Appellee.

NORTHERN PROPANE GAS COM-
PANY, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 72-1292-72-1294.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1972.

Decided Jan. 3, 1973.

As Amended on Denial of Rehearing
and Rehearing En Banc
Jan. 29, 1973.

———◆———

James W. R. Brown, Omaha, Neb., for appellants.

John A. Townsend, Atty. Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges and BOGUE,* District Judge.

STEPHENSON, Circuit Judge.

This appeal presents the perplexing question of whether, for depreciation purposes, the "enhanced value" of a going concern's assets may be included in the adjusted basis of a purchaser of the business.[1]

From 1960 to 1964, appellant (Northern) acquired the assets of 58 propane gas distributorships located within an eight state area. Northern was subsequently determined by the Commissioner of Internal Revenue to have allocated excessive dollar amounts of the lump sum purchase price for each distributorship to the depreciable assets, i. e., no part of the contract price was allocated to the *nondepreciable* "going concern" value inherent in each acquisition. Northern paid the deficiencies assessed and brought these tax refund suits below. The trial court essentially agreed with the position of the Commissioner, finding a nondepreciable "going concern" value of $4,767,908.32 in the acquisitions. However, the court ordered a refund of $115,579.04 to Northern following a recalculation of the adjusted basis for the assets acquired. The Commissioner does not appeal from the judgment of the trial court.

Prior to acquisition of the propane distributorships, Northern's officers inspected the premises of each firm and determined a value for the physical assets for purposes of contract negotiation. They also inspected some of the propane cylinders and tanks installed on customer properties. The evidence indicates that the value placed on these used tanks and cylinders was similar to the cost of each had they been purchased new. Northern utilized these valuations as the adjusted basis figure for depreciation on its tax returns for 1960–64. Where the final contract price for each acquisition exceeded Northern's asset valuation, the excess was allocated to Goodwill.[2]

Northern forcefully asserts that the trial court erred in finding that the adjusted basis for depreciation stated in the 1960–64 returns were improper to the extent that they included the enhanced value of the assets resulting from their presence in established businesses. Northern relies on IRC § 1012 which states that the basis of property shall be its cost—which here would be the amount Northern allocated to the customer equipment from the lump sum purchase price for each distributorship. They reason that though a particular combination of physical assets may have a greater value due to their existence in an operating business, this enhancement constitutes an actual increase in the cost of acquiring such assets and should be considered as part of their basis for depreciation purposes. Northern's proposition is, therefore, that where a purchaser of an operating business acquires such assets at their fair market value, the amounts paid for these assets should be included in the purchaser's depreciation base.

Contrasted with Goodwill, "going concern" value or the enhanced value of assets due to their existence within an operating business and its status under our tax laws has received little judicial consideration. Courts first recognized

---

* Of the District of South Dakota, sitting by special designation.

1. We are not here concerned with the problem of adjusted basis for capital gains purposes.

2. Ultimately, some adjustments were made to the amounts allocated to Goodwill. The amounts allocated to Goodwill, as such, are not here in dispute.

that physical assets have greater value when part of a going concern than when not earlier in this century in utility regulation cases where at issue was the determination of a rate base upon which a fair rate of return was to be applied. The Supreme Court in Los Angeles Gas & Electric Corp. v. Railroad Commission, 289 U.S. 287, 313, 53 S.Ct. 637, 647, 77 L.Ed. 1180 (1933), while admonishing regulatory agencies that utilities are to be treated as living organisms and not as bare bones, stated:

> * * * This court has declared it to be self-evident 'that there is an element of value in an assembled and established plant, doing business and earning money, over one not thus advanced,' and that this element of value is 'a property right' which should be considered 'in determining the value of the property upon which the owner has a right to make a fair return.' [citations omitted] The going value thus recognized is not to be confused with good will, in the sense of that 'element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business,' which, as the court has repeatedly said, is not to be considered in determining whether rates fixed for public service corporations are confiscatory. [citations omitted].

In Texas-Empire Pipe Line Co. v. C. I. R., 10 T.C. 140 (1948), aff'd, 176 F.2d 523 (C.A.10, 1949), where the taxpayer had acquired all the assets of a subsidiary, the tax court held that the fair market value of the assets necessarily included their enhanced value as part of a going concern, explaining, "The assets here involved were acquired by petitioner upon a taxable liquidation or exchange, and their fair market value as of the date of liquidation represents petitioner's cost as to these items, and consequently constitutes petitioner's basis for depreciation purposes." 10 T.C. at 151.

Under *Texas-Empire*, when the fair market value of the physical assets of an acquired business is ascertainable, that value, including their enhanced or going concern value, can be used as the "cost" or basis for depreciation under § 1012. In the instant case, however, the trial court specifically found there was no "used" market from which the fair market value of Northern's customer equipment could be ascertained.

The Ninth Circuit held to the contrary in United States v. Cornish, 348 F.2d 175 (C.A.9, 1965), where the depreciation basis of new partners in a lumber company was at issue. While recognizing that the special skills of the selling partners may have made the sawmills more valuable than ordinary sawmills, thus increasing the market value of the tangible assets, the court found that the trial court had erred in "considering the going concern element in fixing the fair market value of the partnership tangibles, and in failing to determine the amount of the negotiated price which should be attributed to going concern value as a nondepreciable intangible asset." 348 F.2d at 185.

Faced with conflicting guidance on the problem, we resort to the basic theory of depreciation for an answer. Section 167 of the Code states that there shall be allowed a depreciation allowance for the "exhaustion, wear and tear (including a reasonable allowance for obsolescence)" of business property. This allowance for depreciation is intended to provide a nontaxable fund to restore income-producing assets at the end of their useful life and their capacity to produce income has ceased or, to allow a taxpayer to recoup his investment in wasting assets free of income tax. 4 Mertens, Law of Federal Income Taxation, §§ 23.01 and 23.04 (1972). With this in mind, we conclude that the basis for depreciation of a purchaser of a going concern should not include the "enhanced" portion of the acquired assets' value. Though the assets of a going concern may have a greater actual value when acquired in their combined form and therefore cost more to acquire,

at the end of these assets' useful life they will not be separately replaced with new tanks and cylinders with like enhanced value, but only by tanks and cylinders at the ordinary prices of suppliers. The going concern value or enhancement in the assets' value remains and is independent of the exhaustion of the individual assets. See *Cornish, supra,* at 185.

■ We do not view our holding as being in conflict with § 1012 which dictates that the basis for depreciation shall be the cost of the acquired property. This was not a transaction involving the purchase of assets with a fair market value of X dollars which, following the end of their useful life, will be replaced by like assets of similar cost. Here, the acquired assets carried additional value due to their being combined in a particular manner in a going concern and this additional value will not depreciate but will continue to exist possibly for the life of the business which acquired the assets. To hold otherwise would be to allow taxpayers unlimited discretion in allocating purchase costs to depreciable assets.[3]

Northern further contends that the trial court erred in approving the replacement cost method as a means of determining the appropriate basis of the customer equipment. The trial court, once it determined that the adjusted basis could not include the enhanced value of the assets due to their existence as part of a going concern, modified, but in the main approved, the replacement cost method utilized by the Commissioner as an acceptable way to ascertain the value of the propane tanks and cylinders acquired by Northern. Replacement cost

was determined by utilizing the following formula:

$$\text{Replacement cost} = \text{Cost new} + \text{Installation costs} + \text{Utilization equipment} \times \frac{\text{Remaining useful life}}{\text{Actual useful life}}$$

The replacement cost of the acquired assets for each distributorship was subtracted from the purchase price, leaving an amount to be allocated as nondepreciable intangibles (including going concern value).

■ The trial court specifically found that no fair market value could be arrived at for the used assets purchased by Northern. This finding is not clearly erroneous. Valuation is a question of fact calling for the considered judgment of the trier of fact whose determination should not be disturbed unless clearly erroneous. See Rule 52(a), F.R.Civ.Proc. and O'Malley v. Ames, 197 F.2d 256 (CA 8 1952). Where no "used" market existed from which fair market value for these assets could be ascertained, the trial court naturally was forced to resort to other means. Replacement or reproduction cost of assets is evidence of their value. 10 Mertens, Law of Federal Income Taxation § 59.06 (1972) (and cases cited at n. 73).

However, Mertens warns that:

Reproductive cost must be adjusted for depreciation and obsolescence, and such adjustments should be backed up by a careful and detailed analysis. Adjustments for depreciation should not be made on a purely theoretical basis, but should reflect the actual reduction in market value resulting from wear, age and obsolescence. 10

---

3. In *Cornish*, at 186, fn. 18, the Court stated:

 If a man pays ten thousand dollars for a commercial building having a fair market value of eight thousand dollars, the entire ten thousand dollar cost normally becomes his basis for depreciation. It does not, however, if it can be shown that he intentionally paid part of the price for a nondepreciable intangible as-

set such as good will or going concern value.

Some intangible assets, however, are depreciable where it can be established that they are of use for a limited period which can be estimated with reasonable accuracy. IRC Reg. § 1.167(a)–3. Compare Northern Natural Gas Co. v. O'Malley, 277 F. 2d 128 (CA8 1960).

Mertens, supra, at § 59.06 (footnotes omitted).

The trial court in its determination fully complied with the above admonition and the approved valuations were supported by expert opinion evidence. We conclude that the replacement cost method, under the circumstances of this case, was permissible and the resulting valuations are not clearly erroneous.

In view of our disposition of the issues discussed, we find it unnecessary to consider Northern's contentions regarding the proper standard of proof in a refund suit. In any event, we could not hold that the judgment was "induced by an erroneous view of the law." Northern Natural Gas Co. v. O'Malley, 277 F. 2d 128, 138 (CA 8 1960). We further conclude that Northern's claims (1) that it was misled with prejudice as to the ultimate issue to be resolved at trial, and (2) that the trial court's findings with respect to valuation of assets other than customer equipment are clearly erroneous, are both without merit.

Affirmed.