**GENERAL TELEVISION, INC., a Colorado Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 4–73 Civ. 378.**

United States District Court, D. Minnesota, Fourth Division.

Memorandum Order Sept. 15, 1977.

On Motion for Amendment of Judgment April 3, 1978.

Kenneth M. Anderson, Craig L. Vollmar, and John P. James, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Andrew W. Danielson, U. S. Atty., D. Minn., Minneapolis, Minn., by D. Patrick Mullarkey, Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter is before the court for trial upon stipulated facts.

The plaintiff, General Television, Inc., is a Colorado corporation with its principal place of business in Minneapolis, Minnesota.

The plaintiff has brought this action for refund of federal income taxes and interest assessed and collected for the tax years 1964[1] and 1965.[2] Jurisdiction is based upon 28 U.S.C. § 1346(a)(1). Venue is based upon 28 U.S.C. § 1402(a)(2).

In 1962 the plaintiff purchased all of the outstanding stock of Delmarva Community Antenna Corporation (Delmarva) and Peninsula Community Television Company, Inc. (Peninsula), operators of competing community antenna television (CATV) systems in the Salisbury, Maryland area. Subsequently, Delmarva and Peninsula were liquidated, and the plaintiff received all of the assets of both corporations.[3] The intangible assets which the plaintiff received were valued at $612,055.00 and included 5,870 existing subscriber contracts, non-exclusive municipal franchises, pole rental agreements, other contracts, leases and right-of-way agreements, the service and office organization, goodwill and the in-place value of the tangible assets.

In 1966 the plaintiff purchased substantially all of the assets of Diamond State CATV, Inc., an operator of three CATV systems in Delaware. The plaintiff received intangible assets which were valued at $253,361.68 and which included 1,360 existing subscriber contracts, non-exclusive municipal franchises, three antenna site agreements, right-of-way permits, pole rental agreements, in-place value of tangible assets, the service and office organization and goodwill.

The plaintiff filed returns for its tax years 1964 and 1965 in a timely fashion. On audit, the Commissioner of Internal Revenue (Commissioner) determined that the plaintiff was not entitled to deduct amounts which it claimed as depreciation for its intangible assets. Assessments were made for deficiencies in these respects and were paid by the plaintiff. Subsequently, the plaintiff filed claims for refund. The Commissioner disallowed the plaintiff's claims, and this action was then brought to recover the amounts disallowed, plus interest at the statutory rate.

The only issues between the parties are whether or not the plaintiff is entitled to a depreciation deduction for the intangible assets of its Delmarva-Peninsula and Diamond State CATV systems and, if so, in what amount.

Section 167(a) of the Internal Revenue Code authorizes as a depreciation deduction a reasonable allowance for the exhaustion

---

1. The plaintiff's fiscal year ended June 30, 1965.

2. The plaintiff's fiscal year ended June 30, 1966.

3. Later the operations of the Delmarva and Peninsula systems were merged.

and wear and tear of property used in a trade or business. An intangible asset may be subject to a depreciation allowance, under the Treasury regulations, if it is "known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy." 26 C.F.R. § 1.167(a)–3.

██ Whether a particular intangible capital asset may be depreciated, when it is acquired by purchase of an ongoing operation, depends upon its identification with goodwill. Where the useful life of an intangible asset is clearly limited to a defined period, as is the case with patents and copyrights, depreciation is available without question even though for some purposes the intangible asset is an element of goodwill. 26 C.F.R. § 1.167(a)–3.

██ Goodwill is a concept that embraces many intangible elements and is presumed to have a useful life of indefinite duration. Collectively, these intangibles are associated with continuing favorable customer patronage, and goodwill is seen as a self-regenerating asset whose economic value fluctuates but does not necessarily diminish. Since goodwill has no ascertainable useful life, the presumption that goodwill is a nondepreciable capital asset is conclusive. *Houston Chronicle Publishing Co. v. United States*, 481 F.2d 1240, 1247 (5th Cir. 1973). The Treasury regulation specifically provides that "[n]o deduction for depreciation is allowable with respect to goodwill." 26 C.F.R. § 1.167(a)–3.

██ Entitlement to a depreciation allowance is a question of fact. *Houston Chronicle Publishing Co. v. United States, supra* at 1249. Therefore, entitlement to an allowance for the depreciation of subscriber contracts is dependent upon a taxpayer's establishing that the subscriber contracts (1) have an ascertainable value separate and distinct from goodwill and (2) have a limited useful life, the duration of which can be ascertained with reasonable accuracy.

The plaintiff contends that, because the Delmarva-Peninsula and Diamond State CATV systems had short and less than profitable business histories, there was no goodwill to be transferred at the times those CATV systems were acquired. The defendant contends that the subscriber lists are inextricably linked to goodwill and have no ascertainable value apart from goodwill.

It is clear that the plaintiff negotiated its agreements to purchase the Delmarva-Peninsula and Diamond State CATV systems based on its anticipation of profits which could be earned by those systems. It is true that the anticipated earning capacity was calculated on the basis of existing subscriber contracts. However, it is also true that the number of existing subscriber contracts alone had little value as an indicator of the systems' earning capacity; it was that number together with the number of years the system had been operating which was significant to the plaintiff because it was the relationship between the number of subscribers and the years of operation which defined market saturation and which indicated consumer acceptance. Knowledge of market saturation and of consumer acceptance coupled with the knowledge of the cost of operation enabled prediction of future earnings. Therefore, because the subscriber contracts served primarily as a measure of the Delmarva-Peninsula and Diamond State CATV systems' earning capacity and because goodwill is based primarily upon earning capacity, the court is of the opinion that to the extent that the intangible assets purchased by the plaintiff consisted of subscriber contracts those assets constituted goodwill. *See* Rev.Rul. 59–60, 1959–1 Cum.Bull. 241. Because the subscriber contracts have no ascertainable value separate and apart from goodwill, they are nondepreciable.

██ It is true that certain types of customer or subscriber lists have an ascertainable value separate and apart from goodwill. *See, e. g., Houston Chronicle Publishing Co. v. United States, supra* (subscription lists from newspaper discontinuing publication); *General Ins. Agency, Inc. v. Commissioner*

*of Internal Revenue*, 401 F.2d 324 (4th Cir. 1968) (insurance policy expiration lists); *Robins & Weill, Inc. v. United States*, 382 F.Supp. 1207 (M.D.N.C.1974) (insurance policy expiration lists); *Western Mortgage Corp. v. United States*, 308 F.Supp. 333 (C.D.Cal.1969) (loan service contracts). However, in the instances in which customer or subscriber lists have been determined to have an ascertainable value separate and apart from goodwill, the lists alone carried with them no expectancy of continued patronage. In the present case, what the plaintiff purchased was more than mere subscriber lists which could be used to identify potential customers; what it purchased was customer structures which included the expectancy of continued patronage. Therefore, because the purchases of the subscriber lists were actually purchases of customer structures with the expectancy of continued patronage and because the expectancy of continued patronage is the essence of goodwill, the subscriber lists constitute non-depreciable goodwill. *Cf. Northern Natural Gas Co. v. United States*, 470 F.2d 1107 (8th Cir. 1973).

Because the plaintiff asserts that the intangible assets which it purchased consist solely of the subscriber lists and because the court has concluded that the subscriber lists were nondepreciable, the court also concludes that the Commissioner's action in disallowing the plaintiff's claims was proper and that the plaintiff is entitled to no refund of taxes.

The foregoing shall constitute the court's Findings of Fact and Conclusions of Law.

Upon the foregoing,

IT IS ORDERED That the plaintiff take nothing by its cause of action and the action be dismissed with prejudice.

## ON MOTION FOR AMENDMENT OF JUDGMENT

This matter comes before the court on the plaintiff's timely motion for amendment of the judgment entered on September 15, 1977, and for amendment of the findings of fact contained in the court's order of September 14, 1977. Rules 52(b) and 59(a) and (e), Fed.R.Civ.P.

The plaintiff contends that the municipal franchises, the utility pole rental agreements and the leases, right-of-way agreements and miscellaneous contracts which the plaintiff acquired as a part of its purchases of Delmarva-Peninsula and Diamond State had no value. The court does not agree.

On September 1, 1962, when Delmarva and Peninsula were liquidated, the plaintiff allocated $612,055.00 as its basis in the "franchises, municipal agreements and other intangible assets" which it had acquired as a part of the Delmarva-Peninsula purchase. If the franchises and municipal agreements were totally without value, it would have made no sense to describe the assets involved in such terms. In addition, even though those franchises and the pole rental agreements were obtained without the payment of initial fees, Delmarva and Peninsula undoubtedly incurred expenses in obtaining those agreements. Because the plaintiff included the franchises and municipal agreements as assets and because it was unnecessary that the plaintiff incur additional expenses to obtain the rights provided by the various agreements, the court is convinced that those agreements have value.

Likewise, the intangibles which the plaintiff acquired as a part of its purchase of Diamond State included a number of franchises. Because Diamond State had paid franchise fees and had incurred other expenses in obtaining those franchises and because the plaintiff could not have operated the Diamond State CATV system without those franchises or without incurring additional expenses to obtain other franchises from the municipalities served by Diamond State, the court is convinced that the Diamond State franchises also had value.

The plaintiff also acquired leases and right-of-way agreements. The record contains no evidence as to their value or the lack thereof. The burden is on the plaintiff to establish and persuade the court of the

absence of value of the leases and right-of-way agreements; it failed to do so. Therefore, the court cannot conclude that they were of no value.

The plaintiff also contends that the service and office organizations which it acquired in the Delmarva-Peninsula and Diamond State transactions had no value. The court does not agree.

The record does establish that the service and office organizations were not as efficient as they might have been. However, the mere lack of optimum efficiency does not mean that those organizations were of no value to the plaintiff as a going concern. Indeed, the fact that the plaintiff continued to use the existing service and office organizations instead of attempting to replace them tends to indicate that those organizations were of more than nominal value to the plaintiff. Because the plaintiff has offered no other evidence to support a finding that the service and office organizations were without value, the court can only conclude that the plaintiff has failed to meet its burden of proof.

The plaintiff next contends that it acquired no goodwill in its purchases of Delmarva-Peninsula and Diamond State. It analogizes the subscriber contracts involved in the present case to the players' contracts which were held to be depreciable in *Laird v. United States*, 556 F.2d 1224 (5th Cir. 1977). The court does not consider the two types of contracts to be analogous.

The players' contracts in *Laird* were personal service contracts containing non-competition clauses with options for renewal. Those contracts were separate from goodwill because they represented assets which were independently and uniquely valuable to the taxpayer; they were distinguishable from goodwill because there was a contractual compulsion requiring the continuation of the relationship. *See, e. g., Commissioner of Internal Revenue v. Seaboard Finance Co.*, 367 F.2d 646 (9th Cir. 1966); *KFOX, Inc. v. United States*, 510 F.2d 1365, 206 Ct.Cl. 143 (1975).

The contracts presently at issue are terminable at will; subscribers are free to terminate service at any time. Therefore, all that the subscriber contracts represent is the expectancy of continued patronage. *See Sunset Fuel Co. v. United States*, 519 F.2d 781, 783 n.2 (9th Cir. 1975); *Commissioner of Internal Revenue v. Seaboard Finance Co., supra.* Because the expectancy of continued patronage is the essence of goodwill, the value of the subscriber contracts must be allocated to goodwill. Because the value of the subscriber contracts must be allocated to goodwill and because goodwill is not deductible the plaintiff is not entitled to any deduction for it. 26 C.F.R. § 1.167(a)–3.

Upon the foregoing,

IT IS ORDERED That the plaintiff's motion for an amended judgment and for amended findings of fact be and hereby is denied.