Leonard GOODMAN and Ann Goodman, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 78–71283.

United States District Court, E. D. Michigan, S. D.

April 1, 1981.

---

Plotkin, Yolles, Siegel & Turner, P.C. by Marcus Plotkin, Robert W. Siegel, Southfield, Mich., for plaintiffs.

John F. Murray, Acting Asst. Atty. Gen. by Dennis M. Donohue, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

GILMORE, District Judge.

This is an action for the recovery of income taxes for the taxable year 1970. Leonard Goodman and his wife Ann Goodman (hereinafter "the taxpayer") contend that they are owed $29,613.47 resulting from the improper assessment of a deficiency by the defendant. Although several legal issues are involved, this case essentially turns on the following factual issues:

1. Whether the taxpayer met its burden of showing that the IRS improperly reallocated portions of the purchase prices of three mobile home parks to nondepreciable assets, such as good will, land, and "going concern" value;

2. Whether the taxpayer met its burden of showing that the IRS improperly calculated the "useful life" of various tangible assets for purposes of depreciation under 26 U.S.C. § 167.

On or about April 15, 1971, the taxpayer filed a joint Federal Income Tax return for the taxable year 1970, and paid the tax shown due on the return, $18,834.57. By letter dated December 1, 1977, the IRS mailed the taxpayer a Notice of Deficiency in the amount of $29,613.47, and interest. On April 13, 1978, the IRS made the assessment of $29,613.47 and $13,543.71 in interest.

The taxpayer paid the IRS the full amount of the assessment, exclusive of interest, on April 25, 1978, and subsequently filed a claim for refund (form 1040X). The IRS denied the claim for refund.

The taxpayer is a partner in three Michigan copartnerships which, over a period of years, purchased several mobile home parks in the Detroit and Lansing metropolitan areas.[1] Each of the mobile home parks contains various tangible assets such as concrete paths, paved roads, and each park provides electric, water, and sewer services to each mobile home.

One park, located in the City of Westland, a suburb of Detroit, is known as the Mohawk Park. The other two are Park Terrace and Kristana. All three rent land to mobile home owners on a month-to-month basis.

It is undisputed that the Mohawk Park began operation in 1942 and was purchased in 1966 (then operating 111 sites) for $487,500. The Park Terrace Mobile Home Park began operation in 1959, and was purchased in 1968 (then operating 162 sites) for $725,000. Kristana Mobile Home Village began operation in 1966, and was purchased in 1970 (then operating 128 sites) for $570,000. The taxpayer has a ⅛ interest in Mohawk, a 50 percent interest in Park Terrace, and a 50 percent interest in Kristana.

In filing their 1970 returns, each of the partnerships allocated the purchase price of their respective parks principally to depreci-

---

1. Another mobile home court was originally before the Court, but the parties have stipulated with reference to the allocation of depreciable and nondepreciable assets in it. This is the Ackels Mobile Court, a Michigan Copartnership. It was agreed by the parties that the land was valued at $53,000, miscellaneous assets at $27,929.37, utility buildings at $560,020.25, goodwill at $10,000, and land improvements at $378,430.38.

The useful life for depreciation purposes pertaining to the following assets are as follows in Ackels Mobile Court: Utility buildings, 30 years; gas improvements, 30 years; water drain improvements, 30 years, and land improvements, the amount taken per partnership tax return.

Since this has been settled, there will necessarily have to be an adjustment in the amount involved in this case because, at the time of the payment of the deficiency by taxpayer, Ackels was also in dispute.

able assets, and thereby minimized their respective tax obligations. Upon audit, the IRS reallocated substantial amounts of the purchase prices to land and other nondepreciable assets. The IRS made the following determinations:

**TOTALS FOR NON-DEPRECIABLE ASSETS, INCLUDING LAND**

|  | RETURN | IRS |
|---|---|---|
| MOHAWK | $42,500.00 | $248,132.00 |
| PARK TERRACE | 94,000.00 | 405,500.00 |
| CHRISTANA | 90,000.00 | 246,589.50 |

The IRS also redetermined the "useful lives" of certain of the assets of each park. Note that the Park Terrace and the Kristana parks were depreciated on the basis of the composite method. The IRS redeterminations are reflected in the following chart:

**PARK TERRACE**

|  | RETURN | IRS |
|---|---|---|
| LAND IMPROVEMENTS | 10 years | 25 years |

**KRISTANA**

|  | RETURN | IRS |
|---|---|---|
| LAND IMPROVEMENTS | 10 years | 26 years |

**MOHAWK**

|  | RETURN | IRS |
|---|---|---|
| WATER IMPROVEMENTS | 8 years | 40 years |
| ROADS | 8 years | 20 years |

■ The IRS assessment of $29,613.47 was principally based on the above reallocation of purchase price and redetermination of the useful lives of the assets involved. Under 26 U.S.C. 167(a), the taxpayer must sustain the burden of showing that the entire amount of the claimed deduction falls within the statute which permits a reasonable allowance for exhaustion of the property used in trade or business, or held for the production of income. It is obvious that this section is designed to prevent the taxpayer from sustaining actual loss. *Masey Motors v. United States*, 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592 (1960).

■ Where "qualified" property is purchased, there must be an allocation of the purchase price between depreciable and nondepreciable assets. The portion of the purchase price of the business attributable to land and unidentified intangibles, such as good will and going concern value, is not subject to depreciation. *Winn-Dixie Montgomery v. United States*, 444 F.2d 677 (CA5 1971).

■ A depreciable asset can only be depreciated over its useful life. 26 U.S.C. 167(a). The useful life of an asset is, in general, the years the asset is expected to function profitably in use. *Massey Motors, Inc. v. United States*, 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592 (1960). The Commissioner's determination of useful life is presumptively correct. *Casey v. Commissioner*, 38 T.C. 357 (1962).

Thus, the taxpayer has a very heavy burden in this suit. Not only must the taxpayer overcome the Commissioner's determination of the useful life of the various assets, the taxpayer must also establish its right to a refund and produce evidence from which the proper assessment can be calculated. *Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932). Clearly, the taxpayer's burden cannot be met by simply meeting the evidence of the defendant.

Here, the taxpayer takes several, by now, well worn approaches in seeking a refund. First, the taxpayer contends that its allocation of the purchase prices of the respective mobile home parks was essentially correct. Plaintiff's initial argument is buttressed by the alternative assertions that either mobile home parks do not have intangible assets such as good will and going concern value or any intangibles associated with Mohawk, Kristana, and Park Terrace have a measurable life and are therefore amortizable.

Second, and failing all else, the taxpayer argues that, should it be determined that the purchase price of any of the parks exceeded the depreciated reproduction costs at the item of purchase, the amount of overpayment should be apportioned between depreciable and nondepreciable assets.

■ It is elementary that any allocation of the purchase price or determination of the useful life of the depreciable assets must be accomplished through some form of comparison with similar assets. The Court has the task of reconstructing the actual value of the depreciable assets at the time of purchase by the taxpayer. After arriving at this figure, there is a basis to conclude that any amount of the purchase price in excess of the "actual value" of the depre-

ciable assets presumably must be apportioned among the tangible and intangible *nondepreciable* assets. Plaintiff's second argument seeks to apportion the excess amounts included in the purchase prices between *depreciable* and nondepreciable assets.

Perhaps the simplest method used in fixing the value of the depreciable assets at the time of purchase would be a direct comparison with the sales of similar assets at the time in question; however, where no market for such assets exist, the direct comparison method is not useful. In the instant case, it is undisputed that the direct comparison is, at a minimum, unreliable because no market exists for used assets of the type involved herein. At best, the sale price of other mobile home parks could be compared with the sale price of Mohawk, Park Terrace, and Kristana, and some educated guess made as to the relative cost of the depreciable assets within each park. Even the plaintiff questions the usefulness of the direct comparison method in this case. Plaintiff's exhibit B, at page 13, states:

> "The most effective individual use of the Direct Sales Comparison method is for an estimate of value for the vacant site. This analysis must include a comparison of like factors, however, because the availability of utilities and the requisite zoning are of major importance in the land value estimate. As indicated above, one of the more difficult aspects of developing a mobile home park is that of getting zoning approval."

Defendant's experts testified that the reproduction cost method was the only method appropriate for the determination of the value of the depreciable assets. This conclusion was based on the undisputed testimony that a used market for the depreciable assets involved in this case does not exist.

█ In circumstances where no used market exists for comparison purposes, the reproduction cost method is a well accepted determinant of value. *Northern Natural Gas Co. v. United States,* 470 F.2d 1107, 1110 (CA8 1973); *Copperhead Coal Co. v. Commissioner,* 272 F.2d 45 (CA6 1959). The Court is therefore persuaded that the reproduction cost method is an appropriate approach to fixing the value of the depreciable assets in the instant case.

The reliability of the expert witnesses presented by both the taxpayer and the defendant is basic to a resolution of the issues in this case. The taxpayer's principal witness was Leo J. Majzels, an appraiser who has worked for more than a quarter of a century, participating in large and small appraisals. Defendant's principal witness was Glen Desmond, an equally qualified appraiser. The defendant also called Paul Monohon, a civil engineer whose speciality is mobile home park development.

The conclusions of plaintiff's and defendant's experts were divergent in the extreme. The Court chooses to accept the testimony of defendant's experts for the reasons set forth below. The credibility of the various experts was central to this determination.

The divergence in the expert testimony is best exemplified by the testimony offered as to the Mohawk Park. Mr. Majzels found that the value of the depreciable assets of the Mohawk Mobile Home Park, as of the date of purchase, was as follows:

| | |
|---|---|
| SITE IMPROVEMENTS | $225,100 |
| BUILDINGS | 49,300 |
| SIGN | 700 |
| TRUCK | 500 |
| MISCELLANEOUS | 750 |
| TOTAL | $276,400 |

Mr. Majzels then added the estimated value of the land, $67,000, which provided a total of $345,400, rounded to $345,000. Majzels factored in $37,500 for "utilities sales", and adjusted the value of the depreciable assets to $350,000. This adjustment in the value of the depreciable assets was accomplished through a correlation of the value achieved under the cost reproduction method with

the values achieved through two other methods of appraisal.[2]

On the basis of the total figure of $387,000, Mr. Majzels concluded that the purchase price paid for Mohawk Mobile Home Park contained an overpayment of $100,500. As to this alleged overpayment, Mr. Majzels states, at page 44(a) of exhibit A, as follows:

"It was called to my attention by Mr. Robert Siegel, Attorney at Law, that any overpayment, such as discussed in detail on page 42 of my report; must be allocated to the land and improvements."

Majzels therefore allocated an additional $80,902 to depreciable assets.

Significantly, Mr. Majzels testified that there was no enhanced value, going concern value, or good will associated with Mohawk, Park. Terrace and Kristana. The Court finds this conclusion and resultant allocation of the alleged overpayment largely to depreciable assets to be extremely suspect.

Defendant's expert, Mr. Desmond, arrived at completely different conclusions. He testified that the only reliable method that could be used in determining the value of the depreciable assets was the "cost method." On the basis of this method, he found the total reproduction cost of the depreciable assets to be $208,943 (see exhibit 15). Defendant's experts testified that, as of the date of purchase, the cost to reproduce the depreciable land improvements of Mohawk was $54,667. Defendant therefore allocated $432,833 of the purchase price to nondepreciable assets, including land, good will, and going concern value.

The Court is persuaded that the testimony offered by defendant's expert is more credible. Plaintiff's expert, Mr. Majzels, sometimes approached the ludicrous in his testimony. His testimony that mobile home parks cannot have an enhanced value attributable to good will or going concern value is simply not believable.

■ Succinctly defined, going concern value is the amount of enhanced value asso-

ciated with assets because those assets are combined in an on-going business. In *Northern Natural Gas*, supra, at 1109–1110, the Court stated:

"With this in mind, we conclude that the basis for depreciation of a purchaser of a going concern should not include the enhanced portion of the acquired assets value. Though the assets of a going concern may have a *greater actual value when acquired in their combined form and therefore cost more to acquire*, at the end of these assets' useful life they will not be separately replaced with new tanks and cylinders with like enhanced value, but only by tanks and cylinders at the ordinary price of suppliers." (emphasis added)

■ The Court need not ascertain the precise value of the amounts attributable to good will, going concern value, or the enhanced value of the land. None of them is depreciable. Once the Court has fixed the value of the depreciable tangible assets, it is logical to infer that the remaining portion of the purchase price is allocable to the various nondepreciable assets. *Northern Natural Gas*, supra.

The taxpayer's assertions that going concern value was not a portion of the purchase prices of Mohawk and the other parks strains credulity. This is also true of the taxpayer's contention that mobile home parks do not have good will. Certainly the location of the park, its cleanliness, and its reliability would go toward the establishment of good will. In this respect, mobile home parks are not unlike other businesses. Defendant testified that all of the parks enjoy good locations.

The Court simply cannot accept any appraisal which does not factor in elements of good will, going concern value, and the enhanced value of the land in this case. This Court has the distinct impression that Mr. Majzels has come into this proceeding attempting to get the largest possible depreciation allowance for his clients and to do the

2. The taxpayer's expert, in addition to the cost reproduction method, also employed an income

approach and a fair market comparison approach.

best he could for them. The Court cannot agree with the conclusions he has reached with reference to Mohawk or the other parks.

The Court therefore makes the following findings: The cost to reproduce the land improvements of Mohawk as of the purchase date was $54,667; the useful life of the road improvements was ten years, and the useful life of the water improvement was 50 years. As to the findings pertaining to useful life, defendant submitted testimony that Mohawk was still suitable for older tenants and for smaller mobile homes. Further, plaintiffs brother and partner, Dr. Goodman, testified that Mohawk remained almost 100 percent occupied and could completely turn over every three or four weeks.

Taxpayer has a 50 percent interest in Park Terrace Mobile Home Park, which was purchased in December of 1968 for $725,000. Based upon the testimony of Mr. Desmond and Mr. Monohon, and disregarding the testimony of Mr. Majzels for the reasons set forth above, the Court finds that the cost to reproduce the land improvements in this park, as of the date of its purchase, was $331,066. The composite useful life of the land improvements at the date of construction was 33 years, and therefore the remaining useful life at the date of purchase was 28 years.

With reference to Kristana Mobile Home Park, the taxpayer has a 50 percent interest. This park was purchased for $570,00 in 1970. For the same reasons given above, the Court finds that the cost to reproduce the land improvements in this park, as of the date of purchase, was $350,000. At the date of construction, the land improvements to Kristana had a composite useful life of 32 years. The remaining useful life at the date of purchase was 28 years.

■ As to the taxpayer's claim that the intangible assets involved in this case are amortizable over the useful life of the park, the argument is not well taken. It is true that intangible assets can be subject to depreciation through amortization if a taxpayer bears the burden of proving that the intangible assets involved have an as-certainable value separate and distinct from good will, and have a limited, reasonably ascertainable, useful life. See *Houston-Chronicle Pub. Co. v. United States*, 481 F.2d 1240, 1251 (CA5 1972).

■ Here, the taxpayer has not met the foregoing test. There is no evidence of an ascertainable value separate and distinct from good will or of a limited useful life. The intangibles involved herein, good will and going concern value, do not have a useful life of limited duration. They simply are not capable of reasonably accurate measurement, and there is no evidence to support such a claim. The concrete pads, patios, and other site improvements can be replaced, allowing the parks to continue to exist as going concerns. Here, the mobile home parks have enhanced value flowing from both their locations and their existence as going concerns prior to their purchase.

■ The taxpayer has also contended that any difference between the cost of reproduction, depreciated as of the purchase date, and the purchase price of a park should be apportioned between depreciable and nondepreciable assets. To support this argument, the taxpayer relies upon the testimony of Mr. Majzels for the proposition that mobile home parks have no intangible assets. A similar argument was rejected by the Ninth Circuit in *United States v. Cornish*, 348 F.2d 175 (1965). There, the Court stated, at page 185, fn. 15:

"If, on analysis, the four million dollar negotiated price is found to contain value elements which may not properly be associated with tangible assets, they must necessarily be regarded as intangible assets."

Similarly, the application of the reproduction cost method in this case, as well as other evidence, plainly demonstrates that the purchase price of these mobile home parks contain "value elements" not properly associated with tangible depreciable assets. Accordingly, this amount must necessarily be regarded as nondepreciable.

Based on all that has been said heretofore, and as a result of the settlement of the parties of one of the parks involved, the Court orders the defendant to make a computation of the amount of tax and interest properly owing by the plaintiff as a result of this opinion. If the parties should fail to agree on the computation of such amount, the issue shall be presented to the Court for determination. If agreement is not reached within thirty (30) days of the date of this opinion, the parties should come into court and arrange for a hearing date so the Court can settle the amount due and owing and enter judgment.

This opinion shall constitute the findings of fact and conclusions of law required by FRCP 52(a).

An order in accordance with this opinion may be presented.