**IMPERIAL NEWS CO., INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 79 Civ. 275.**

United States District Court, E.D. New York.

Nov. 3, 1983.

Patrick J. Gallagher, Rockville Centre, N.Y., for plaintiff.

Vicki G. Cheikes, Trial Attorney, Tax Div., Department of Justice, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

GLASSER, District Judge:

The plaintiff taxpayer seeks a refund of federal corporate income taxes, contending that the Internal Revenue Service improperly disallowed claimed depreciation deductions. The United States has moved for summary judgment relying on stipulated facts and on its own statement of facts submitted pursuant to Eastern District Court Rule 9(g).[1] The taxpayer did not file

---

1. Rule 9(g), Motions:

Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth by the moving party will be deemed admitted unless contro-

a responsive 9(g) statement of the facts as to which it claims there is a genuine issue until after the oral argument on this motion.

■ The taxpayer has also failed to comply with Rule 56(e), Fed.R.Civ.P. This rule requires that responsive affidavits in opposition to a motion for summary judgment set forth specific facts showing that there is a genuine issue for trial, and precludes a party's reliance upon mere allegations or denials of his pleading. Summary judgment, if appropriate, shall be entered against an adverse party who fails to respond as required by Rule 56. The taxpayer's response to the government's motion was a memorandum of law.

Although it was submitted five days after oral argument on the motion, I have nevertheless examined the taxpayer's Rule 9(g) statement[2] and find that it does not raise a genuine issue as to any material fact. After due consideration of the undisputed facts I conclude that the government's motion for summary judgment should be and it is hereby granted.

*Discussion*

The taxpayer is a local distributor of magazines to retailers in Queens, Long Island, the Bronx, and Brooklyn. From 1968 to 1974, the taxpayer was engaged in expanding, through acquisitions and consolidation, its operations in the New York area.

During the years 1970 to 1974, the taxpayer, or its subsidiaries, claimed depreciation deductions calculated on a straight-line basis over a twenty year period for intangible assets acquired by its purchase of Seljen Co., Bronx County News Corp., and G & S Company. The contracts by which its purchases were made allocated a substantial amount of the purchase price to "good will" or to "distribution contracts and good will." Asserting that a depreciation allowance may not be claimed for good will (which the taxpayer does not dispute), the government disallowed the depreciation deduction, and assessed additional income taxes in the sum of $223,935.44, which the taxpayer paid and seeks to recover in this action.

The uncontroverted facts reveal that (1) during the taxable years in question and at all other pertinent times the taxpayer had no written distribution contracts with national distributors or with publishers; (2) any relationship that did exist between the taxpayer or its predecessors and national distributors was terminable at will; (3) wholesale distributors have no transferable distribution rights; and (4) the number of magazine titles available to a wholesale distributor is not of major importance to his business as a whole.

■ The taxpayer contests the government's characterization of the deduction as one for "good will" and contends that the deduction was properly claimed for an intangible asset with an ascertainable life, an ascertainable value, and which it would characterize as a "right to distribute."

The government contends that the amounts paid by the taxpayer could not be attributed to any separately identifiable or valuable intangible asset and, in addition, that the taxpayer is bound by the form of its agreements, which fail to allocate any portion of the purchase price to intangible assets other than good will.

Internal Revenue Code Regulation § 1.167(a)–3 is the pertinent regulation. It provides:

> If an intangible asset is known from experience or other factors to be of use in the business for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depre-

verted by the statement required to be served by the opposing party.

**2.** Oral argument on this motion was heard on Friday, June 17. Taxpayer did not submit his statement pursuant to Rule 9(g) until June 22. On July 12, nearly one month after oral argument, taxpayer submitted, without permission of the Court, a letter and segments of deposition transcripts which it believes support its position that disputed facts exist in this case. These submissions were neither read nor considered.

ciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life. No deduction for depreciation is allowable with respect to good will.

The government relies on the disallowance of a depreciation deduction for good will as specifically provided in that regulation and on *Thriftycheck Service Corp. v. Commissioner of Internal Revenue,* 287 F.2d 1 (2d Cir.1961).

In that case the taxpayer purchased the assets of a check service company that was being liquidated. In the sales contract a substantial amount was allocated to "customer contracts," with a smaller amount to " 'Thrifty-check' trademark and good will." Notwithstanding the specific allocation to "customer contracts" and the transfer of written customer contracts pursuant to the sales contract, the depreciation deduction was disallowed because the court found that there was no way to accurately estimate the useful life of the customer contracts. Each contract contained a provision for premature cancellation and for automatic renewal, with a history and prospect of relations continuing beyond the ten years covered by the initial and first renewal terms. The court held that a taxpayer must show that available data enables him to establish an average life span for the customer contracts, and noted that the experience of his predecessor would not necessarily be his own. *Thriftycheck, id.,* at 4–5. The court recognized that a purchaser of renewable business contract buys not only the immediately available benefits of a going business, but the intangible value of expected future business. In such a case the intangible asset is not a wasting asset subject to depreciation since its useful life is indeterminable.

Here, the taxpayer did not acquire any distribution contracts, since no such contracts existed. What the taxpayer acquired was simply the expectation that the publishers and national distributors would continue to do business with it in its new geographical areas. This probability of continued patronage is one of the aspects described in *Thriftycheck, supra,* as having an indeterminate useful life.

The taxpayer has made no claim that any publisher or distributor has ceased to deal with it since it acquired the former distributors. Rather, it claims that the purchase price for the various acquisitions was somehow derived from the distribution of particular titles, a large number of which (70%) have since been discontinued. No data has been submitted to indicate whether discontinued titles have been replaced by other titles or offset by a larger volume in the remaining titles, supplied by the same publishers and distributors. Since the taxpayer has not indicated that the cancellation of titles actually decreases the value of its relationships with the national distributors, the fact that titles have been discontinued cannot provide a basis for estimating the useful life of those relationships.

The taxpayer contends that no good will ever existed (and so could not be purchased) because the companies acquired were "sick" companies. He cites no authority for the proposition that good will cannot exist in an ailing company. That good will *can* exist in financially ailing companies, *see General Television v. United States,* 449 F.Supp. 609, 140 A.F.T.R.2d 77–5926 (D.Minn.1977), *aff'd* 598 F.2d 1148 (8th Cir.1979) (subscriber lists from an unprofitable company constituted good will).

In *Commissioner v. Seaboard Finance Co.,* 367 F.2d 646 (9th Cir.1966), the court listed the following as "going" concern value" or good will:

1. Customer renewals;
2. New business acquired from existing customers;
3. New business acquired from former customers;
4. The ability to avoid start-up costs by stepping into the seller's shoes;
5. Customer structure.

The taxpayer here purchased nothing more than "the ability to avoid start-up costs by stepping into the seller's shoes," replacing the seller as the local distributor with whom the national distributors were likely to deal.[3]

■ Finally, the taxpayer claims that the allocation of amounts to good will in the sale contracts was inadvertent and simply a routine "boiler plate" allocation. He asks the Court to disregard the terms of the contract for the reason that these terms were not bargained for.

■ "Strong proof" of a different intent is required before the court will go beyond the terms of a written contract. *Ullman v. Commissioner*, 264 F.2d 305 (2d Cir.1959). The Third Circuit has gone even further, requiring that a taxpayer present evidence that would be sufficient, in an action between the parties, to alter the terms of the contract (i.e., fraud, duress, or mistake), before it will alter the tax consequences of that contract. *Commissioner v. Danielson*, 378 F.2d 771 (3d Cir.1967). Under either standard, the taxpayer has given no indication that such proof exists. On the contrary, during his oral argument taxpayer's counsel argued persuasively that the terms of the contracts were carefully negotiated, thus belying any claim that the allocations to good will were inadvertent.

In sum, I find nothing in the record to warrant a finding of a genuine issue of fact which would lead to a denial of the government's motion for summary judgment. That motion is, therefore, granted.

---

**3.** In his Memorandum, taxpayer claims that he was encouraged by the national distributors to purchase the companies in question. Thus, it seems unlikely that he would have paid the companies for the right to deal with distributors who had already indicated their willingness to deal with him.