**DONREY, INC., Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 86-1377.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1986.

Decided Jan. 20, 1987.

Steven Parks, Dept. of Justice, Washington, D.C., for appellant.

Lester G. Fant, III, Washington, D.C., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

---

JOHN R. GIBSON, Circuit Judge.

■ The issue before us is whether Donrey, Inc., the taxpayer, is entitled to a depreciation deduction under the federal income tax laws for the subscription list or subscription structure of a newspaper it purchased. Donrey attempted to claim such a deduction and the Commissioner of Internal Revenue disallowed it. Donrey paid the deficiency and brought this action in the district court[1] for a refund of taxes erroneously assessed and collected. The issues were tried to a jury and the jury, answering special interrogatories, found that the subscription list had a limited useful life; that the duration of its useful life could be ascertained with reasonable accuracy; that the useful life of the list was twenty-three years; that it had an ascertainable value separate and distinct from goodwill; and that that value was $559,406. The district court denied the government's motion for judgment notwithstanding the verdict and entered judgment in favor of Donrey. The government now argues that the subscription structure of the newspaper was part of the goodwill purchased by Donrey and is not depreciable as a matter of law. We affirm the judgment of the district court.

Donrey purchased the *Washington Times Herald*, a newspaper serving the farm community surrounding Washington, Indiana, on November 1, 1972. Donrey continued to distribute the newspapers by delivery to subscribers' homes, and by placement in stores and coin-operated vending machines. The home deliveries were made by motor route drivers, by mail subscription, and by young carriers hand-delivering the papers to subscribers' homes. The carriers worked as independent contractors, buying the papers at wholesale and selling them to customers at retail. The carriers were requested to furnish the management of the newspaper with the names and addresses of subscribers, but were not required to do so. Subscriptions were terminable at will. At the time of purchase, the newspaper had approximately 10,490 paying subscribers; for the years 1972 to 1984 the number of subscribers varied between 11,221 and 10,490, although during the later years the figure averaged approximately 11,000. There was constant turnover of subscribers, an ordinary incident of the newspaper business, and from time to time circulation drives were conducted.

The total purchase price paid by Donrey for the *Washington Times Herald* was $1,335,804. Donrey claimed depreciation deductions with respect to the portion of the total purchase price it allocated to the paper's subscription structure. After an audit of Donrey's 1977–78 returns, the Internal Revenue Service determined that the subscription structure was not a depreciable asset and issued deficiency notices. The taxpayer paid the deficiencies, filed administrative claims for refund, and upon denial brought this action in the district court.

The government filed a pretrial information sheet which set forth as an issue of fact "whether the subscription lists in question have an ascertainable value separate and apart from goodwill, and a limited useful life, which can be ascertained with reasonable accuracy." The case was tried to the jury. Donrey presented several lay and expert witnesses who testified that the subscription list had a limited useful life when acquired in 1972. Dr. Cristine Urban, president of a market research and consulting firm that serves newspapers, testified that her firm conducted a study of the *Washington Times Herald* subscription list and, based on their analysis, made an estimate of the useful life of the list. She testified that the list had a useful life of twenty-three years.

There was evidence that 80% of the newspaper's gross revenues come from advertising, without which the newspaper would not be profitable. The advertising

---

**1.** The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

rates are determined by the number of persons on the subscription list. The general manager of the *Washington Times Herald,* Morris Tolbert, testified that the subscription list is an indispensable tool in selling advertising and is not simply a list but instead is used much as a machine to generate advertising revenue. Advertisers use the list in order to evaluate how many persons will see their advertisements. Many of the nation's newspapers have their lists independently audited by the Audit Bureau of Circulation so that advertisers will have confidence in their accuracy. The *Washington Times Herald* utilized this service and the report in selling advertising. Donrey's vice president, Ross Pendergraft, relied on these audits in evaluating the newspaper's subscription list in making his decision to recommend that Donrey acquire the business.

There was testimony that a newspaper with a subscription list is substantially different from the "shopper" type paper which is distributed free of charge. Advertisers are willing to pay more to place advertisements in newspapers with paid subscription lists than in shoppers because readers are more likely to read newspapers for which they have paid. There was also testimony that the *Times Herald* derived additional revenue from advertisers as a result of the subscription list. One of Donrey's experts testified that the value of the subscription list is related to this revenue enhancement—it is the present value of the difference in advertising revenues generated by the subscription list as compared to the revenues of an equivalent paper without a subscription list. This value was thus characterized as being separate and apart from goodwill.

The issues were submitted to the jury on special interrogatories and the jury found that the list had a limited useful life, the duration of which could be ascertained with reasonable accuracy; that the useful life was twenty-three years; and that it had an ascertainable value separate and distinct from goodwill. The value of the subscription list separate and distinct from goodwill was found to be $559,406 and the value of the goodwill was found to be $156,775.

The government filed a motion for judgment notwithstanding the verdict and the district court, in a carefully detailed opinion, outlined much of the testimony we have discussed above and denied the motion. The court commented, however, that if it had been the trier of fact it would have found the subscription list to be nondepreciable. It also declined to order a new trial, concluding that there had been no miscarriage of justice and that the verdict was not contrary to the great weight of the evidence.

■ Section 167(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 167(a) (1982), authorizes "as a depreciation deduction, a reasonable allowance for the exhaustion, wear and tear * * * of property used in the trade and business" of a taxpayer. The term "property" as used in section 167(a) includes intangible assets with a limited useful life providing the length of that useful life can be estimated with reasonable accuracy. Treas.Reg. § 1.167(a)–3. Goodwill is conclusively presumed to have an unlimited useful life and as such is ineligible per se for the depreciation deduction. *Id.; see General Television, Inc. v. United States,* 449 F.Supp. 609, 611 (D.Minn.1977), *aff'd,* 598 F.2d 1148 (8th Cir. 1979) (per curiam). The government's single contention on appeal is that the *Times Herald* subscription list is part of the goodwill purchased by Donrey and is thus nondepreciable. It argues that our decision in *General Television, Inc. v. United States, supra,* is controlling and that the district court erred in failing to hold that the subscription list was nondepreciable as a matter of law.

■ Entitlement to a depreciation allowance for an intangible asset is a question of fact. *General Television,* 449 F.Supp. at 611; *see Houston Chronicle Publishing Co. v. United States,* 481 F.2d 1240, 1249 (5th Cir.1973), *cert. denied,* 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974); Treas.Reg. § 1.167(a)–3. The parties agree that the leading case involving

the depreciability of a newspaper subscription list is *Houston Chronicle Publishing Co. v. United States, supra.* The Fifth Circuit held in *Houston Chronicle* that a newspaper subscription list may be depreciated if the taxpayer "sustains his burden of proving that the lists (1) have an ascertainable value separate and distinct from goodwill, and (2) have a limited useful life, the duration of which can be ascertained with reasonable accuracy." 481 F.2d at 1251. This is the same analysis employed by the district court in *General Television*, 449 F.Supp. at 611, and implicitly approved by us. 598 F.2d at 1148. It has also been employed by the Tax Court. *See Manhattan Co. of Virginia v. Commissioner*, 50 T.C. 78 (1968), *acq.*, 1974–2 C.B. 3.

As we have already observed, the jury was asked by special interrogatories whether the lists purchased by Donrey had an ascertainable value separate and distinct from goodwill, and whether the list had a limited useful life, the duration of which could be ascertained with reasonable accuracy. It answered both questions affirmatively. It also ascertained the value and the useful life. In denying the government's motion for a judgment notwithstanding the verdict, the district court determined that reasonable minds could differ as to the correct result and that there was evidence from which the jury could properly find for Donrey. We conclude that the district court applied the correct test in considering whether to overturn the jury's verdict, *see, e.g., Toro Co. v. R & R Products Co.*, 787 F.2d 1208, 1213–14 (8th Cir.1986); *McGee v. South Pemiscot School District R–V*, 712 F.2d 339, 343 (8th Cir.1983), and, based on the evidence recited above, we believe that the district court reached the correct conclusion.

The decision in *General Television* is not to the contrary. The district court in *General Television* simply applied the same test as used herein and reached a different conclusion based on different facts. It does not entitle the government to judgment as a matter of law, nor does it compel us to conclude that the instant subscription list is nondepreciable goodwill.

We also observe that the government took the position before and at trial that the issues of whether Donrey's subscription lists had an ascertainable value separate and apart from goodwill and a limited useful life were matters of fact to be determined by the jury. Only after the jury resolved these issues in a way unfavorable to the government did it assert that these lists were nondepreciable goodwill as a matter of law.

We affirm the judgment of the district court.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent.

The underlying facts in this case are undisputed. Donrey bought the *Washington Times Herald* for $1,335,804 on November 1, 1972. He purchased all of the paper's assets, both tangible and intangible, and operated the paper in basically the same manner after the purchase. The sole issue is whether Donrey could depreciate the *Times Herald's* subscription list for tax purposes. Resolution of the issue depends upon the characterization of the list as "goodwill" or not. If it is goodwill, the subscription does not qualify for a depreciation deduction. Treas.Reg. § 1.167(a)–3.

The majority correctly observed that the leading case addressing this issue is *Houston Chronicle Publishing Co. v. United States*, 481 F.2d 1240 (5th Cir.1973), *cert. denied*, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974). In that case, the court held that a newspaper's subscription list was a depreciable asset when publication of the paper was being discontinued. *Id.* at 1251. The court accurately discussed the characteristics of goodwill:

> "[T]he nature of goodwill ... is the expectancy that 'the old customers will resort to the old place.' *Commissioner of Internal Revenue v. Killian*, 314 F.2d 852, 855 (C.A.5, 1963); *Nelson Weaver Realty Co. v. Commissioner of Internal Revenue*, 307 F.2d 897, 901 (C.A.5, 1962); *Karan v. Commissioner of Internal*

*Revenue,* 319 F.2d 303, 306 (C.A.7, 1963). '[T]he essence of goodwill is the expectancy of continued patronage, for whatever reason.' *Boe v. Commissioner of Internal Revenue,* 307 F.2d 339, 343 (C.A.9, 1962).... [T]o the extent [a given item or asset] contributes to the expectancy that the old customers will resort to the old place it is an element of goodwill. *Commissioner of Internal Revenue v. Seaboard Finance Co.,* 367 F.2d 646, 651 n. 6 (C.A.9, 1966); *Boe v. Commissioner of Internal Revenue, supra,* 307 F.2d at 343.

" . . .

"This Court has held that . . . goodwill is acquired by the purchaser of a going concern where the 'transfer enables the purchaser to step into the shoes of the seller.' *Balthrope v. Commissioner of Internal Revenue,* 356 F.2d 28, 32 n. 1 (C.A.5, 1966); *Masquellette's Estate v. Commissioner of Internal Revenue,* 239 F.2d 322, 325 (C.A.5, 1956). We have also said that goodwill is transferred where, as here, the buyer continues the seller's business uninterrupted, using primarily the seller's employees, and utilizing the seller's name. *Barran v. Commissioner of Internal Revenue, supra,* 334 F.2d 58, 61 (C.A.5, 1964). It is immaterial that the agreement did not use the term 'goodwill,' for '[t]he use of these words is, of course, not necessary if in fact what is transferred does give to the purchaser everything that can effectively aid him to step into the shoes of the seller.' *Masquelette's Estate v. Commissioner of Internal Revenue, supra,* at 325; *see also Barran v. Commissioner of Internal Revenue, supra,* at 61...."

*Id.* at 1247, *quoting Winn-Dixie Montgomery, Inc. v. United States,* 444 F.2d 677, 681–82 (5th Cir.1971). Therefore, it should follow from this analysis that had the *Times Herald* been purchased with the purpose of continuing its operation, the subscription list would be part of goodwill because it would enable "the purchaser to step into the shoes of the seller."

This is precisely the reasoning of the district court in *General Television, Inc. v. United States,* 449 F.Supp. 609, 612 (D.Minn.1977), *aff'd per curiam,* 598 F.2d 1148 (8th Cir.1979). *General Television* resulted from the purchase of operators of competing community antenna television systems. The purchaser sought a depreciation allowance for the subscriber lists. The court did not allow the deduction. It reasoned:

> . . . in the instances in which customer or subscriber lists have been determined to have an ascertainable value separate and apart from goodwill, the lists alone carried with them no expectancy of continued patronage. In the present case, what the plaintiff purchased was more than mere subscriber lists which could be used to identify potential customers; what it purchased was customer structures which included the expectancy of continued patronage. Therefore, because the purchases of the subscriber lists were actually purchases of customer structures with the expectancy of continued patronage is the essence of goodwill, the subscriber lists constitute non-depreciable goodwill.

*Id.* The case at hand is virtually identical to *General Television.*

It is clear from the record in this case that the jury relied upon expert testimony to the effect that the *Times Herald's* subscription list had an independently ascertainable value. The expert witnesses constructed a scenario that separated the subscription list's value from the value of the ongoing operation by comparing a subscription newspaper's advertising rates with the rates of a "shopper" newspaper, a paper that is delivered free. But, this is not an apt comparison. The undisputed facts establish that the subscription list and the other assets of the newspaper were sold in one single transaction and the subscription list was not separated from the other assets. *Cf. Houston.* Of course, the existing subscription list will change from time to time. But, that change does not make the list a depreciable asset. The experts' attempt to separate the subscription list

from the goodwill must be ignored in the circumstances of this case. The facts here are not in controversy and require the conclusion, as a matter of law, that goodwill include the subscription list. We must apply the law to the undisputed facts. The expert's opinion cannot change the tax law. Thus, the district court should have granted judgment n.o.v. in favor of the government.

Accordingly, I would reverse and enter judgment for the government.